22 N.J. Super. 137 (1952)
91 A.2d 606
MAXINE BEYER, ADMINISTRATRIX AD PROSEQUENDUM, AND ADMINISTRATRIX OF THE ESTATE OF JOSEPH BEYER, JR., DECEASED, JOINTLY AND SEVERALLY, PLAINTIFF-RESPONDENT,
v.
RAYMOND L. WHITE AND A.E.A. CO., INC., JOINTLY AND SEVERALLY, DEFENDANTS-APPELLANTS, AND NORMAN KREFSKY, ADDITIONAL DEFENDANT ON COUNTERCLAIM.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1952.
Decided October 14, 1952.
*138 Before Judges JAYNE, PROCTOR and SCHETTINO.
*139 Mr. Andrew Lawrie argued the cause for Maxine Beyer, administratrix ad prosequendum (Mr. Ben Niemtzow, attorney).
Mr. C. Stanley Smith argued the cause for the additional defendant and for Maxine Beyer, administratrix of the estate of Joseph Beyer, Jr., deceased (Messrs. Schenck, Price, Smith & King, attorneys).
Mr. J. Victor Carton argued the cause for the defendants-appellants (Messrs. Durand, Ivins & Carton, attorneys).
Mr. John Warren, Jr., argued the cause for the defendant-appellant, A.E.A. Co., Inc., on Counterclaim (Messrs. Parsons, Labrecque, Canzona & Combs, attorneys).
The opinion of the court was delivered by SCHETTINO, J.S.C. (temporarily assigned).
Joseph Beyer, Jr., died as a result of injuries received in a collision between an automobile operated by him and a tractor-trailer. The tractor was owned and operated by defendant White, and the trailer was owned by defendant A.E.A. Co., Inc.
Plaintiff Maxine Beyer, as administratrix ad prosequendum of the decedent's estate, sued the defendants under the Death Act and also sued as general administratrix to recover for the deceased's pain and suffering during the approximate period of one-half hour which intervened between the time of the collision and the time of his death. Defendant A.E.A. Co., Inc. counterclaimed for property damage joining the deceased's employer, Norman Krefsky. The claim of plaintiff as general administratrix was dismissed at the close of her case for reasons not related to the issues here presented and she does not appeal from that action. The issues were submitted to a jury which found for plaintiff, as administratrix ad prosequendum, in the sum of $35,000 against both defendants, and for plaintiff and Krefsky on the counterclaim of A.E.A. Co., Inc.
*140 Both defendants appeal from the judgment in plaintiff's favor, and A.E.A. Co., Inc. also appeals from the judgment against it on the counterclaim. The appeal with respect to the counterclaim depends upon the same grounds urged for reversal of plaintiff's judgment.
The grounds so advanced by defendants in common are: (1) that defendant White was not guilty of negligence which was the proximate cause of deceased's injury and death; (2) that deceased was guilty of contributory negligence; and (3) that the verdict was against the weight of the evidence. Defendant A.E.A. Co., Inc., additionally contends there was error in that there was no evidence showing White to be its agent or servant and, furthermore, the court erred in its treatment of the issue of vicarious liability. Defendants' motion for a new trial was denied.

I
The brunt of the first challenge is addressed to the issue of proximate cause rather than to the issue of negligence. However, since defendants' treatment seems to suggest as well that there was no evidence of negligence we will first consider this question.
Insofar as the motions for judgment are concerned, plaintiff was entitled to the benefit of all legitimate inferences favorable to her. Rapp v. Public Service Coordinated Transport, 9 N.J. 11 (1952). Despite great contrariety in the proof, there was ample evidence from which negligence could be found.
The setting was this. The accident occurred on State Highway No. 9-4 in the Township of Manalapan, Monmouth County. The highway consisted of two concrete strips, with black-top surface area on each side of the concrete part of the highway. Defendants refer to the black-top area as shoulders, whereas plaintiff prefers to treat it as a paved portion of the highway proper, designed for regular travel. In our view, neither characterization is crucial, and we will here assume that the black-top areas are shoulders.
*141 One of the tires of the tractor-trailer unit driven by White had become deflated and White had pulled over to the black-top shoulder and parked. He telephoned the corporate defendant for instructions and was advised to remain there until another vehicle arrived with another tire. Deceased was proceeding in the direction in which the tractor-trailer was parked and crashed into its rear. Some testimony fixed the time interval between the parking and collision at less than 15 minutes, and other testimony fixed it at 45 minutes.
The time was night. There is no disagreement that it was a dark night. The tractor-trailer was parked near a gas service station which had considerable artificial illumination. But there was evidence from which it could be concluded that the station's lights contributed little or nothing to the illumination of the highway. There were no highway lights. There was a conflict as to whether or not the trailer's lights were lighted. The jury could have found that the only light burning was a clearance light on the upper part of the right-hand side of the trailer toward the rear and that light had the visibility of a lighted match. The jury could also have found that White did not have with him the flares required by R.S. 39:3-64 and did not place any flare on the highway until after the crash.
There were various descriptions of weather conditions, ranging from substantial visibility to a foggy condition so dense that nothing was visible more than five feet beyond the front of a vehicle. There was evidence that in the area there was a drifting mist or fog which could account for the divergent testimony.
We think it clear that there was evidence from which the jury could properly conclude that White was guilty of negligence in not providing adequate lighting upon the vehicle and in failing to have and display the required flares. Hence, the trial court properly refused to rule for defendants as a matter of law on the issue of negligence.
We proceed to the issue of proximate cause. Additional facts bear upon defendants' claim. The highway curved to *142 the left with reference to traffic going in the direction of Beyer's car. The tractor-trailer was parked at approximately the end of the curve. A street entered the highway at about that point, the service station being just beyond that street; the service station apparently having an entrance from the side street as well as from the highway. There was testimony by a trooper that tire marks traced to deceased's car indicated that his car had been proceeding on the concrete lane and at the curve, about 120 feet from the point of collision, travelled onto the black-top shoulder in virtually a straight line to the rear of the truck. There was testimony by a witness driving about 300 feet behind the deceased that Beyer was driving at about 25 miles per hour. The rear of Beyer's car, after the collision, was on a slightly elevated grass plot to the right of the shoulder, from which fact defendants argue that deceased must have first mounted that grass area, but there was also evidence from which it could be inferred that after the collision the rear moved from the shoulder to its final position.
Defendants cite Powers v. Standard Oil Co., 98 N.J.L. 730 (Sup. Ct. 1923), affirmed 98 N.J.L. 893 (E. & A. 1923); Monaco v. Comfort Bus Line, Inc., 134 N.J.L. 553 (E. & A. 1946) and cases from other jurisdictions which we think add nothing to the principles applied in the cited cases of our own state.
In the Powers case a truck was parked illegally in that it was parked on the wrong side of a street. A child, running from behind the truck to cross the street, was struck by a moving automobile. It was held that the position of the truck was not the proximate cause of the occurrence, the court saying at page 733:
"In this situation the truck was immobile, inactive instrumentality, incapable in its inactive condition of perpetrating harm or damage."
The court, of course, did not mean that an immobile truck could never be capable of perpetrating harm or damage. The court said merely that the accident would have occurred as *143 it did even if the truck had been facing the other way. In short, the negligent act there charged in no way contributed to the event.
In the Monaco case, a bus while traversing a bridge suddenly turned at a 45-degree angle, mounted a curb, passed over a pedestrian walk and plunged through a guard rail into a river. It was sought to hold the defendant counties on a charge that the curbing and railing did not meet the minimum construction requirements. In holding that the trial court properly directed verdicts for the counties, the court said (134 N.J.L., at page 560):
"As a prerequisite to the cases going to the jury it was incumbent upon plaintiffs to show that if the curb and railing had met the standards contended for the accident probably would have been prevented. The record is barren of any such testimony. The jury could not have been permitted to speculate on this phase of the issues."
In short, the primary cause lay in the operation of the bus, and what was lacking with respect to the effort to show that the counties' neglect contributed to the result was evidence that a proper curb and rail would have prevented the plunge into the river.
Defendant's position can be sustained only if the following question must be answerable in the affirmative as a matter of law: If the tractor-trailer was properly lighted and flares were placed as required, would the collision nevertheless have taken place? For example, if the proof established that deceased had lost consciousness, and for that reason his car pursued the course described, then we would agree that White's neglect could not have been the proximate cause of the accident. The collision then would have occurred just as it did even if the time were midday or the lighting at night were perfect. But we are unable to conclude as a matter of law that the collision would have occurred if White had fulfilled his duty. The jury might properly have inferred that Beyer drifted to the shoulder by reason of the curve, and that his speed was such that had proper lighting been *144 present, he could have either maneuvered around the tractor-trailer or stopped in time. The jury might well have concluded that if Beyer's car mounted the grass plot, it was because Beyer made a last moment effort to avoid the impact.
Of course, plaintiff has the burden of proving proximate cause. That burden must be delicately severed from defendants' burden of proving contributory negligence and we are keeping the two subjects distinct. But plaintiff was not obliged to establish proximate cause by direct indisputable evidence. The matter may rest upon legitimate inference, so long as the proof will justify a reasonable and logical inference as distinguished from mere speculation. The evidence in this case was sufficient to produce an inference of that requisite nature, and the trial court properly refused to treat the issue as one of law.

II
The contention that contributory negligence appears as a matter of law rests upon the claim that the physical facts demonstrate excessive speed and that the circumstances and the course taken by deceased's car conclusively establish a negligent failure to keep the car under control.
As to speed, reliance is placed upon the extent of the damage and testimony that deceased's car, weighing 3,000 pounds, moved the tractor-trailer having a total weight of 58,600 pounds, a distance of about 15 inches forward. With respect to the extent of the damage, we lack any expert information which would lead us to conclude that it bespeaks a speed either in excess of the lawful rate of 45 miles per hour or lesser rate excessive under the weather conditions. Considerable though the damage to deceased's car was, we simply do not know whether, for example, a speed of 15 miles per hour would have entailed the result.
So also assuming that the jury was bound to believe that the impact moved the parked unit 15 inches, we are barren of knowledge which would lead us to the conclusion defendants *145 urge. We do not know what momentum would be developed by a 3,000-pound automobile at various speeds, and assuming that we could properly notice judicially the abstract answer, we would still be at a loss to correlate such elements as friction, angle of contact, and point of contact. If there is any irresistible conclusion which could be expertly demonstrated, the record is devoid of it.
Nor can we conclude that the other circumstances point only to contributory negligence. If it may be assumed that entering upon a shoulder of a highway bespeaks negligence, and we are not at all prepared to say that it does under all circumstances, yet even that fact would not establish negligence which proximately contributed to the collision. A man who culpably lapses in that regard may well, absent warning of an obstruction upon the paved shoulder, conclude to return to the concrete lane by a gradual maneuver rather than an abrupt one. In short, on that hypothesis it could be concluded that the neglect, if any, in leaving the concrete lane and proceeding a relatively short distance on the shoulder was not a proximate cause of the event because had the obstruction been properly lighted, the deceased could readily have avoided the disaster. After all, the shoulders of a road are there to receive moving vehicles in many situations, one of which is the inadvertent loss of the main portion on a curve, and hence the naked circumstance of entering upon the shoulder does not invite a ruling against plaintiff as a matter of law.
Defendants further urge that under the disputed weather conditions and lighting of the tractor-trailer and the service station, contributory negligence must be found. Included is a reference to holdings relating to a driver's duty when visibility is impaired. But a court is not justified in selecting any single hypothesis under the proofs. The jury could have found that the speed was reasonable under the circumstances as the jury found them to be in that the lighting and warning, far from being indisputably sufficient, were negligently inadequate.

*146 III
With respect to the contentions that the verdict was against the weight of the evidence, we frankly have had considerable difficulty and at times have found ourselves on both sides of the issue. But that circumstance has served to underscore our delicate responsibility in these matters. Issues of fact are constitutionally triable by the jury, and although our authority to grant a new trial is of course incontestable, yet a court must be careful lest it preempt the jury's role merely because, if the original responsibility had been its, it might have reached a different result. The controlling principle, embodied in Rule 1:2-20(a), is:
"A verdict of a jury shall be set aside as against the weight of the evidence if, having given due regard to the opportunity of the trial court and the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion."
Upon careful deliberation we conclude as did the trial judge, that we would not be justified in disturbing the verdict. Flexmir, Inc. v. Lindeman & Company, 8 N.J. 602 (1952).

IV
The facts relating to the issue of the liability of the corporate defendant for White's negligence are these: White owned the tractor. The corporate defendant owned the trailer. It held an I.C.C. franchise for a prescribed route, and over a considerable period of time engaged White to haul for it at a prescribed tonnage rate. None of the usual deductions made from an employee's salary was made against White's compensation. For three years prior to the accident White had hauled only for the corporate defendant with the exception of a two-weeks period. In addition, with respect to the element of control, White telephoned the corporate defendant for instructions and instructions were given as recounted hereinabove.
*147 The trial court refused the corporate defendant's motion for judgment saying that the issue of agency was for the jury and further, that if White were an independent contractor, yet the corporate defendant might be held under the theory of vicarious liability arising out of its operation under a franchise of the Interstate Commerce Commission. It is argued that there was no evidence of agency and that the imposition of liability by virtue of the federal franchise went beyond the issues framed in the pretrial order in violation of the holdings in Cauco v. Galante, 8 N.J. 233, 238 (1951); Jenkins v. Devine Foods, Inc., 3 N.J. 450 (1950).
After the trial of this case below the Supreme Court handed down Trautman v. Higbie, 10 N.J. 239 (1952), in which it was held that the holder of an I.C.C. franchise is chargeable with the negligence of one engaged by the holder to haul under the permit. Under that authority the trial court could have charged that the corporate defendant was responsible for White's negligence as a matter of law. Hence, the corporate defendant may not complain of the submission of that issue or the issue of agency unless the rules relating to pretrial orders was violated.
The pretrial order states that plaintiff "contends that defts. individually and by their agents or servants, negligently and wrongfully operated and parked," etc., and that "Defts. expressly deny any agency relation. Deft. A.E.A. Co., Inc., deny any control over the tractor-trailer at the time."
During the trial defendant objected to reference to vicarious liability under the I.C.C. permit. If the pretrial order were as confining as defendant urged, an amendment would have been warranted under Rule 3:16(b) because the affinity of the subject to the charge against it is so great that an amendment "to prevent manifest injustice" would have been in order. There is no suggestion that there was any element of surprise which deprived defendant of an opportunity to introduce other proof which could have affected the result. Accordingly if the order were as confining as contended, we *148 would have the narrow question whether the omission to amend requires a reversal.
The trial court held that the pretrial order embraced the questioned basis of liability and we agree. Plaintiff's contentions quoted above from the pretrial order were comprehensive. Where A is chargeable with the actions of B whom he engages, whether A is thus liable because his duty is nondelegable (cf. Levine v. Bochiaro, 137 N.J.L. 215 (E. & A. 1948)), or because a statute commands that responsibility shall remain with him as in the present case, it seems to us to be accurate to say that B becomes in law the agent of A so far as injured third persons are concerned, no matter what may be the technical relation in a controversy between A and B. In short, in these situations, A cannot undertake to act except through persons who are acting in A's stead, and accordingly, as to persons to whom A owes a duty, B is in law A's agent. That, in the final analysis, is the legal effect of the doctrines imposing vicarious liability.
The function of a pretrial order would be unsatisfactorily impaired if the result of a trial should hinge upon a microscopic analysis of the meaning of the words here involved and their technical capacity to embrace vicarious liability. The corporate defendant was certainly apprised by the pretrial order that plaintiff contended that in law it was responsible for White's conduct. If there was any ambiguity in the pretrial order, defendant should have sought more precise delineation.
Accordingly we find it unnecessary to consider whether independent of its liability as holder of the I.C.C. permit, the corporate defendant was otherwise the principal of White.
Judgment is affirmed.