43 N.J. Super. 160 (1956)
128 A.2d 11
CHARLES TAVERNA, PLAINTIFF-APPELLANT,
v.
CITY OF HOBOKEN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 26, 1956.
Decided December 31, 1956.
*161 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Bernard Chazen argued the cause for the appellant (Messrs. Baker, Garber & Chazen, attorneys; Mr. Nathan Baker, of counsel).
*162 Mr. E. Norman Wilson argued the cause for respondent City of Hoboken (Mr. Robert F. McAlevy, Jr., City Attorney).
The opinion of the court was delivered by FRANCIS, J.A.D.
Plaintiff's negligence action against the City of Hoboken was dismissed at the close of his case for failure to introduce any evidence from which an inference of active wrongdoing could be drawn.
An undisclosed number of years ago, the city constructed a sewer system and has since maintained it. In connection therewith, over 20 years ago a manhole was cut in the public sidewalk on the west side of Clinton Street at the northwest corner of Third Street to permit entrance into the sewer at that point. The hole was closed by a removable metal cover which, when in place, was flush with the surrounding sidewalk. It was not locked but remained in position through its own weight. The cover rested on a metal ring which was built into the surrounding granite section of sidewalk and which extended inward one-half to three-quarters of an inch. In the morning of November 9, 1953 the plaintiff Charles Taverna, while walking along the public sidewalk, stepped on this manhole cover. As he did so, it "flipped" out of position, causing him to fall part way into the sewer or manhole and suffer injury.
One witness, who lived only a few houses away from the scene, testified that the manhole cover was "wobbly"  "loose" and "shaky" before the accident. It was that way four years earlier when she moved into the neighborhood. She avoided walking on it because of her knowledge that it was "shaky."
The proof showed also that immediately after the accident the circular "lip" on which the cover rested was observed to be "beveled" (that is, sloping; not at right angles to the opening. Webster's New International Dictionary (2d ed., unabridged)); the stone around it was worn and there was a crack in the stone leading from the "lip of the hole right clean across [the sidewalk] to the front part of the store." *163 A diagram in evidence indicates that the sewer opening is fairly close to the intersecting curb lines of Clinton and Third Streets.
A witness who was driving by saw the plaintiff being helped out of the sewer. After parking his car, he came back to the scene. On arrival, he put his foot "lightly" on the cover (which had been replaced) and it was "very shaky, very movable." Another person, who appeared before the plate was put back, noticed that "part of the side where the top of the iron case fits in" was cracked.
In answer to interrogatories, the city admitted that the maintenance and repair of the manhole and cover were in charge of the Department of Public Works under the supervision of Michael Murtha; that the sewer basins were cleaned "about" once a year and that the manhole and cover in question had been inspected by Murtha on January 9, 1953, at which time the sewer was cleaned.
Murtha's deposition was taken. He said that when the sewers are cleaned, if a cover is found to be loose "we take care of it" by putting "a little hallemite or cement" around it to tighten it up. That is part of his duty.
He further testified without objection that at about 1 P.M. on the day of the accident he came to the scene. He walked on the manhole cover and "it shifted a little bit." At his direction the workmen put some cement around the ring on which the cover is placed "to set it in there tight," so that it would hold securely in place. And it held securely in place after the cementing. He said also:
"Q. Would it be proper, after you knew of this condition that the manhole cover is insecure or loose, to leave it that way without putting the cement around it?
A. No, no. If we find it loose or dangerous, we immediately put it on."
The proofs were in the posture outlined when the motion for judgment was granted.
Our review in a case of this kind must be conditioned by an awareness of a fundamental principle. It is necessary for us, as it was for the trial court, to accept the facts and *164 the inferences from them in the most favorable light to the plaintiff. On doing so, if we are satisfied that reasonable men, deliberating in good faith, might differ as to whether active wrongdoing had been shown, the ultimate determination of the issue must be left to the jury. Gentile v. Public Service Coordinated Transport, 12 N.J. Super. 45 (App. Div. 1951).
This manhole and its cover were not necessary or normal components of a public sidewalk. They were abnormal structures made a part thereof for the convenience of the city. And obviously it was a foreseeable consequence that injury might result if they were permitted to become a hazard through ordinary wear and tear. Members of the public are entitled to assume that the sidewalk, for its full width, is free from obstructions or pitfalls which would render its use dangerous. So protective is this assumption in the law that pedestrians do not have to look for or be on guard for such dangers; their only duty is to avoid them if observed. Saco v. Hall, 1 N.J. 377, 382 (1949); McManus v. New Jersey Water Co., 22 N.J. Super. 253, 262 (App. Div. 1952); Matheke v. United States Express Co., 86 N.J.L. 586 (E. & A. 1914); Durant v. Palmer, 29 N.J.L. 544 (E. & A. 1862).
The evidence indicates that the manhole and cover were in a loose, shaky and dangerous condition for some years before the accident. The city was charged with constructive notice of the condition of disrepair through its agent Murtha, the person actually entrusted with and responsible for the maintenance and repair of such structures. Kelley v. Curtiss, 29 N.J. Super. 291, 299-300 (App. Div. 1954), revised on other grounds, 16 N.J. 265 (1954). But although a private citizen, owner or tenant of premises adjoining a sidewalk containing a similarly defective coal hole cover or metal cover over a drain used in connection with his property, might be liable for injuries resulting therefrom to a pedestrian for failure to remedy or repair the condition (McKeown v. King, 99 N.J.L. 251 (E. & A. 1923); O'Malley v. Gerth, 67 N.J.L. 610 (E. & A. 1902)), *165 under the present state of our law a municipality would not be responsible for such nonfeasance but only for active wrongdoing or a negligent act of commission. Milstrey v. Hackensack, 6 N.J. 400 (1951).
Thus the critical issue is whether, looking at the case most favorably to the plaintiff, an inference of a negligent act of commission can be said to be a reasonable emanation from the evidence. We think that such an inference does emerge.
In our view the description of the physical deterioration and actual state of disrepair of the manhole and cover, coupled with the circumstances of the plaintiff's fall into the hole, sufficiently create an inference of proximate cause and result as to warrant the submission of that problem to the jury for determination. McManus v. New Jersey Water Co., supra; Beyer v. White, 22 N.J. Super. 137 (App. Div. 1952).
Murtha, the officer entrusted with general authority to remedy the defect, was present when his men cleaned the sewer 11 months before the accident. At that time he inspected the manhole and its cover. The physical conditions as described by the plaintiff's proof were open and obvious. From it an inference arises that Murtha saw the defective condition; if he did not see it, then he must be charged with the knowledge that a reasonable inspection would reveal. Once he is chargeable with such notice, whether actual or constructive, it is for the jury to say whether he realized or should have realized the danger of replacing the cover without making the necessary precautionary repairs. Putting the cover back without cementing it securely in place, as it was his admitted duty to do or to have done, or without posting warnings or erecting barricades of some sort on the sidewalk, constituted sufficient evidence of a negligent act of commission to create a jury question as to the liability of the city.
Once the cover was restored to position the danger to a passerby was greater (at least in the daytime) than if the manhole had been left open. In the latter case, the risk of harm would not be so hidden. In O'Malley v. Gerth, *166 supra, a similarly defective coal hole cover in place was called a trap (67 N.J.L., at page 612), as was an unlocked water meter box top in Fay v. Trenton, 126 N.J.L. 52, 54 (E. & A. 1941). However, it is not necessary to speak here in terms of a trap. The liability, if found, is preferably predicated upon the more conventional theory of active wrongdoing. Latzoni v. Garfield, 22 N.J. 84, 89 (1956); Hartman v. City of Brigantine, 42 N.J. Super. 247 (App. Div. 1956).
Problems associated with the application of the doctrine of respondeat superior (Casale v. Housing Authority, City of Newark, 42 N.J. Super. 52 (App. Div. 1956)) are not of legal consequence in this instance. As already set forth, Murtha's plane of authority and duty was sufficient to make his misfeasance that of the city. Milstrey v. Hackensack, supra, 6 N.J., at page 412; Hartman v. City of Brigantine, supra, 42 N.J. Super., at page 256; Kelley v. Curtiss, supra, 29 N.J. Super., at page 302.
Under the circumstances, the judgment of dismissal is reversed and the matter is remanded for a new trial.