MINNA KRUG, PLAINTIFF-APPELLANT, v. EMIL WANNER, T/A WASHINGTON PORK STORE, AND 237 WASHINGTON STREET CORPORATION, A CORPORATION OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued September 23, 1958—Decided November 3, 1958.

*Mr. Frederick Klaessig* argued the cause for the appellant.

*Mr. Seymour A. Smith* argued the cause for the defendant Emil Wanner, t/a Washington Pork Store (*Messrs. Hein, Smith & Mooney,* attorneys).

*Mr. Edward E. Kuebler* argued the cause for the defendant 237 Washington Street Corporation.

The opinion of the court was delivered by
JACOBS, J.  The Law Division granted motions for dismissal of the plaintiff's complaint against the tenant-defendant Emil Wanner, t/a Washington Pork Store, and entered judgment for the landlord-defendant 237 Washington Street

Corporation on the jury's finding that the plaintiff and the landlord-defendant were both negligent and that the plaintiff therefore had no cause for action. The Appellate Division affirmed and we certified on the plaintiff's application under *R. R.* 1:10–2, 27 *N. J.* 73.

The building located at 233 Washington Street, Hoboken is owned by the 237 Washington Street Corporation and includes a street front store, a cellar underneath the store, and two apartments above the store. The street front store and the cellar are occupied by the tenant Emil Wanner, trading as the Washington Pork Store. The public sidewalk in front of the store is paved from building line to curb and on the sidewalk near the corner of the building there are diamond plate steel cellar doors which cover the street entrance to the cellar. The only other entrance to the cellar is inside the store. Mr. Wanner testified that he continued uninterruptedly as a tenant of the store and cellar after his written lease had expired in 1938; that he used the cellar for the storage of meat and equipment; that the gas and electric meters for the apartments above the store had been located in the cellar but were removed recently; that he had the key to the cellar doors which were opened for airing of the cellar every day during the summers but not during the winters; and that although he had never repaired or painted the cellar doors the landlord had repaired them some years earlier. Mr. Hausold, president of the 237 Washington Street Corporation, testified that to the best of his recollection new cellar doors were installed by the corporation in 1951; that the sidewalks surrounding the cellar doors had been repaired by the corporation in 1953; that since 1951 the cellar doors had not been repaired; that the tenant Wanner had "sole use of the basement"; and that the only agreement between the landlord corporation and the tenant Wanner relating to the cellar doors was that the tenant would paint them. Mr. Cohen testified that when in 1951 his firm worked on the cellar doors for the landlord corporation it installed a new frame and hinges but did not replace the old diamond plate steel doors.

The plaintiff Mrs. Krug testified on direct examination that on March 17, 1956 she was passing the Washington Pork Store when she recalled that she wanted to make a purchase; she "turned around" and "stood in front of the cellar door"; she stepped with one foot on the cellar door and "hooked"; she "slipped with the other foot and stumbled"; and she fell and severely injured herself. On cross-examination she testified that her foot "hooked on" or "got caught" on the "outside curve" of the cellar door. Although she admitted that the sidewalk had been swept and "cleaned up" she stated that she had seen some "ice and sawdust" and had seen snow at the point where her foot caught on the cellar door. Mr. Dagle, the plaintiff's son-in-law, testified that he received a telephone call that his mother-in-law had been hurt; he went to the Washington Pork Store and spoke to her; he observed that there were "splotches of ice and snow and sawdust on the cellar door"; he also observed that one corner of the cellar door was "higher than the rest" and when he "kicked the snow away" he "caught" his foot on the cellar door. Mr. Mayo, a licensed professional engineer, testifying as an expert for the plaintiff, stated that he had examined the cellar doors and found that the northwest corner projected nine-sixteenths of an inch above the sidewalk, whereas the southwest corner was one-fourth of an inch above the sidewalk; he considered that the additional elevation at the northwest corner made the cellar door "a hazard"; and he expressed the view that there had been improper construction, improper maintenance "or a combination of the two." Mr. Hogan, a civil engineer testifying as an expert for the plaintiff, stated that he "found the northwesterly corner of the cellar doors one-half inch higher above the iron frame of the door" whereas the "southwesterly corner was one-quarter of an inch higher than the frame"; he expressed the view that the door did not fit properly, that the condition had existed for several years, and that "the cause originated in the fact that the hinge where this is fastened to the frame moves up and down and with the infiltration of dirt underneath that hinge would cause that entire door to be raised up."

██ The defendants introduced expert and other testimony which disputed the plaintiff's contentions but it need not be detailed here; on the issue of whether there was enough evidence against the defendants for submission to the jury, the plaintiff was admittedly entitled to the benefit of all of the favorable testimony introduced on her behalf including all of the favorable inferences to be drawn therefrom. See *Dobrow v. Hertz*, 125 *N. J. L.* 347, 348 (*E. & A.* 1940); *O'Donnell v. Asplundh Tree Expert Co.*, 13 *N. J.* 319, 328 (1953). Her complaint, which sounded in negligence and in nuisance arising out of negligence (*Hartman v. Brigantine*, 23 *N. J.* 530, 535 (1957)), alleged that the corporate defendant had "carelessly constructed and maintained" the cellar door, that the individual defendant had "participated" in the nuisance by failing to correct the condition and make the entrance to his place of business reasonably safe, and that she was injured "when she tripped on that part of the cellar door which was carelessly allowed to rise over the surface of the sidewalk." The complaint also alleged that the defendants had "negligently removed snow" from the sidewalk so as to leave a dangerous layer of ice, had "negligently distributed sawdust from its store," and had "negligently failed to maintain said sidewalk in a safe and suitable manner." While adequate evidence of culpability in the snow removal and sawdust distribution and its causal relation to the accident may perhaps have been lacking (*cf. Taggart v. Bouldin*, 111 *N. J. L.* 464 (*E. & A.* 1933); *MacGregor v. Tinker Really Co.*, 37 *N. J. Super.* 112 (*App. Div.* 1955)), there was at least sufficient evidence to establish that the plaintiff suffered injury on March 17, 1956 when she caught her foot on an upraised corner of the cellar door and that both the landlord and tenant had negligently permitted the cellar door to remain in that defective condition and become a tripping hazard. See *McKeown v. King*, 99 *N. J. L.* 251 (*E. & A.* 1923); *O'Malley v. Gerth*, 67 *N. J. L.* 610 (*E. & A.* 1902).

██ For the protection of its patrons, every commercial establishment must maintain its premises, including means of ingress and egress, in reasonably safe condition. See

*Bohn v. Hudson & Manhattan R. Co.,* 16 *N. J.* 180 (1954); *Brody v. Albert Lifson & Sons,* 17 *N. J.* 383 (1955). *Cf. Nelson v. Great Atlantic & Pacific Tea Co.,* 48 *N. J. Super.* 300 *(App. Div.* 1958); *Ratering v. Mele,* 11 *N. J. Super.* 211 *(App. Div.* 1951). And although the paved sidewalks fronting a commercial establishment are primarily for the use of the public generally, their condition is so beneficially related to the operation of the business that the unrestricted legal duty of maintaining them in good repair might, arguably, be placed on it. See *Moskowitz v. Herman,* 16 *N. J.* 223, 228–31 (1954). But thus far no such duty has been imposed and our State adheres to the common-law rule that abutting owners and occupiers are not ordinarily responsible for injuries resulting from sidewalk defects caused by the action of the elements or the wear and tear incident to public use. See *Rupp v. Burgess,* 70 *N. J. L.* 7 *(Sup. Ct.* 1903); *Coll v. Bernstein,* 14 *N. J. Super.* 71 *(App. Div.* 1951); *Stevenson, "Law of Streets and Sidewalks in New Jersey,"* 3 *Rutgers L. Rev.* 19 (1949). While this general rule of nonresponsibility has left without recourse many innocent parties who suffered serious injuries because of sidewalk defects, our courts have justly not permitted it to defeat recovery where the injured party established that the condition of the sidewalk was actually the result of the abutting owner or occupier's own wrongful conduct or constituted, in broad legal contemplation, a nuisance which the abutting owner or occupier had either originally created or had thereafter participated in maintaining. See *Braelow v. Klein,* 100 *N. J. L.* 156 *(E. & A.* 1924); *Fasano v. Prudential Insurance Co.,* 117 *N. J. L.* 539 *(Sup. Ct.* 1937); *McHugh v. Hawthorne B. & L. Assn,* 118 *N. J. L.* 78 *(Sup. Ct.* 1937); *Wirth v. Peters,* 36 *N. J. Super.* 172 *(App. Div.* 1955); *Longi v. Raymond-Commerce Corp.,* 34 *N. J. Super.* 593 *(App. Div.* 1955). Among the pertinent instances where recoveries were allowed were those where abutting owners and occupiers placed facilities such as drains, grates and cellar doors on the sidewalks for their own private uses and failed to exercise proper care to prevent them from becoming dangerous to the traveling public. See

*McKeown v. King, supra; O'Malley v. Gerth, supra; Blais v. American Grocery Co.,* 129 *N. J. L.* 274 (*Sup. Ct.* 1942); *Young v. National Bank of N. J.,* 118 *N. J. L.* 171 (*E. & A.* 1937); *Walters v. Goren,* 114 *N. J. L.* 308 (*Sup. Ct.* 1935); *Kelly v. Lembeck & Betz Eagle Brewing Co.,* 86 *N. J. L.* 471 (*Sup. Ct.* 1914), affirmed 87 *N. J. L.* 696 (*E. & A.* 1915); *Meyers v. Birch,* 59 *N. J. L.* 238 (*E. & A.* 1896). *Cf. Restatement, Torts* §§ 364, 365 (1934).

In *McKeown v. King, supra,* the premises were owned by Mrs. King and were leased to the J. G. McCrory Company. Mrs. King had constructed a drain across the sidewalk and had covered it with a metal covering flush with the sidewalk. The drain cover had been permitted to become loose and the plaintiff was injured when the cover lifted as she passed over the drain. The owner and the lessee could readily have taken measures to prevent the drain from becoming a hazard to pedestrians. The Court of Errors and Appeals stated that, even if the original construction was entirely proper, the plaintiff could hold both the owner and the lessee responsible upon a showing that they failed to exercise due care in keeping the sidewalk in a reasonably safe condition. In *O'Malley v. Gerth, supra,* the plaintiff was injured when he stepped on a coal hole cover which had carelessly been permitted to become a hazard to safe passage. The court held that even though the defective condition arose while the premises were in the possession of a tenant, the landlord, who could exercise the right of repair, was also accountable to the plaintiff. In *Kelly v. Lembeck & Betz Eagle Brewing Co., supra,* the plaintiff suffered injury when he fell on a smooth and slippery cellar door. In holding the landlord responsible, the court rejected the contention that the tenant in possession, whose control of the cellar door was not exclusive, was alone accountable to the plaintiff. In *Young v. National Bank of N. J., supra,* the plaintiff was injured when he slipped on a sidewalk grating which furnished air and ventilation to the cellar of the defendant's building. In sustaining recovery, the court said:

"The construction of the airway with the grating, flush with the sidewalk, was not a nuisance *per se*, but was a thing the adjacent owner might do subject to the right of free and safe passage of the public over and along every part of the sidewalk. However, the owner, in making such use of the way, was required to do so by such a method of construction as not to create a nuisance, but having done this was under the further legal duty to exercise reasonable care to keep the structure safe for the use of the public. *Meyers v. Birch*, 59 N. J. L. 238, 239; *O'Malley v. Gerth*, 67 N. J. L. 610, 612; *Rupp v. Burgess*, 70 N. J. L. 7, 9; *McKeown v. King*, 99 N. J. L. 251, 258, 259."

In the instant matter there was evidence from which the jury could reasonably find that the landlord-defendant and the tenant-defendant each exercised a measure of control over the cellar doors and that each failed to discharge his responsibility to the plaintiff. See *Pirozzi v. Acme Holding Company of Paterson*, 5 N. J. 178, 188 (1950); *Marzotto v. Gay Garment Co.*, 11 N. J. Super. 368, 372, 376 (*App. Div.* 1951), affirmed 7 N. J. 116 (1951). *Cf. Smith v. Claude Neon Lights, Inc.*, 110 N. J. L. 326 (*E. & A.* 1932); *Fort v. Reid Ice Cream Co.*, 98 N. J. L. 559 (*E. & A.* 1923). The landlord (or its predecessor in title) had installed the cellar doors for its own purposes, had made some repairs to them and to the sidewalks which surrounded them in 1951 and 1953 but not thereafter and, although it had rented the cellar along with the street front store to the tenant-defendant, had permitted the gas and electric meters for the apartments above the store to remain in the cellar. The tenant, while it had neither installed nor repaired the cellar doors, had used them extensively in his business and had the key which controlled access to the cellar not only for his purposes but also for examination of the meters and any other legitimate purposes of the landlord and the apartment tenants. Both the landlord and the tenant were in the position to examine the cellar doors and take steps towards correcting any defects. The landlord could readily make the necessary repairs and while the tenant has suggested that, under his leasing arrangement the duty to repair rested with the landlord, it would seem that he could with equal readiness call upon the landlord to make the repairs

and, in the event of default, make them himself. *Cf.* 32 *Am. Jur., Landlord and Tenant* § 715, p. 590 (1941). While the leasing arrangement between the landlord and the tenant could fix their respective duties of repair as between themselves, it could not relieve the tenant of his duty of exercising due care to prevent the cellar doors from becoming hazardous. See *Spinelli v. Golda*, 6 *N. J.* 68, 74 (1950) and *McKeown v. King, supra,* where the Court of Errors and Appeals noted that "no provision of a lease can absolve a tenant as against a third person from the tenant's duty to maintain a sidewalk in front of the demised premises in a reasonably safe condition." *Cf. Restaino v. Griggs Motor Sales, Inc.*, 118 *N. J. L.* 442 (*Sup. Ct.* 1937); *Knox v. Goodman*, 45 *N. J. Super.* 428 (*App. Div.* 1957), certification denied 25 *N. J.* 47 (1957).

In the light of the foregoing, it is evident that the trial court should have submitted to the jury the plaintiff's claim against the tenant as well as her claim against the landlord; instead, it dismissed the claim against the tenant, and while the jury did find that the landlord had been negligent, it precluded recovery by its finding that the plaintiff was guilty of contributory negligence. The plaintiff as a user of the sidewalk was under the obligation of·exercising due care for her own protection; but in determining whether she properly discharged her obligation, recognition must be given to the judicial view that a member of the traveling public has the right to assume "that there is no dangerous impediment or pitfall" in any part of the sidewalk (*Saco v. Hall*, 1 *N. J.* 377, 382 (1949)), and is not obliged to anticipate dangerous conditions although he must exercise reasonable care to avoid them "if he sees or is aware of them." *McManus v. New Jersey Water Co.*, 22 *N. J. Super.* 253, 262 (*App. Div.* 1952). See *Taverna v. Hoboken*, 43 *N. J. Super.* 160, 164 (*App. Div.* 1956), certification denied 23 *N. J.* 474 (1957):

"This manhole and its cover were not necessary or normal components of a public sidewalk. They were abnormal structures made a part thereof for the convenience of the city. And obviously it

was a foreseeable consequence that injury might result if they were permitted to become a hazard through ordinary wear and tear. Members of the public are entitled to assume that the sidewalk, for its full width, is free from obstructions or pitfalls which would render its use dangerous. So protective is this assumption in the law that pedestrians do not have to look for or be on guard for such dangers; their only duty is to avoid them if observed. *Saco v. Hall*, 1 *N. J.* 377, 382 (1949) ; *McManus v. New Jersey Water Co.*, 22 *N. J. Super.* 253, 262 (*App. Div.* 1952) ; *Matheke v. United States Express Co.*, 86 *N. J. L.* 586 (*E. & A.* 1914) ; *Durant v. Palmer*, 29 *N. J. L.* 544 (*E. & A.* 1862)."

█ The plaintiff testified that she had walked carefully and had been looking down because the sidewalks were slippery; that she had seen the cellar door many times but had not known that there was anything wrong with it; and that after she had placed her left foot on the cellar door, her right foot caught on its snow-covered upraised corner and she stumbled and fell. While there was some evidence suggesting that the plaintiff's fall may have occurred at a point on the sidewalk other than the cellar door, there was indeed little, if anything, to indicate that the plaintiff did not exercise the amount of care which an ordinarily prudent person, situated as she was, would have exercised for her own protection. Tested by the guiding principles expressed in *Taverna v. Hoboken, supra,* the jury's finding. of contributory negligence might be viewed as being against the weight of the evidence; in any event, we believe that it was improperly influenced by extensive testimony relating to a prior accident of the plaintiff which, under our present evidential rules, should not have been received in evidence. See *Quellmalz v. Atlantic Coast Elec. Ry. Co.*, 94 *N. J. L.* 474 (*E. & A.* 1920) ; *Vander Groef v. Great Atlantic & Pacific Tea Co.*, 32 *N. J. Super.* 365 (*App. Div.* 1954). *Cf. Lowenthal v. Mortimer*, 125 *Cal. App. 2d* 636, 270 *P. 2d* 942 (1954) ; *McCormick, Evidence* 325, 350 (1954) ; 1 *Wigmore, Evidence* 667 *et seq.* (3*d* ed. 1940).

During the trial, the plaintiff's counsel pointed out that proof that she had a previous accident "would have no bearing as to whether the defendants caused this accident." When he later objected to a specific question as to when

the plaintiff had her other accident his objection was overruled by the court with the comment "this is cross-examination." Further questioning by counsel for the tenant disclosed that the earlier accident occurred in 1953 at premises in front of 217 Washington Street, and later questioning by counsel for the landlord disclosed that the earlier accident involved a sidewalk tripping and that the plaintiff had made a claim for injuries then sustained. While individual trial objections were not made, counsel for the plaintiff states that he understood the court's original ruling to have been applicable to the entire line of inquiry, and we consider that it would not be just to ignore the error in admitting the testimony. *Cf. R. R.* 1:5-3(*c*). Although the defendants do not urge that the evidence of the previous accident was admissible on the issues of negligence and contributory negligence, they do urge that it was admissible to establish whether the earlier accident left the plaintiff with an "infirmity to her leg" which could have been the cause of her later fall. But her physical condition prior to the accident of March 17, 1956 could fairly and fully have been presented to the jury without eliciting and stressing in the interrogation the legally prejudicial information that three years earlier the plaintiff had fallen over a gas or oil intake pipe on the sidewalk in front of a store "just two stores" away from the defendants' premises and had made a claim for that accident.

We are satisfied that there should be a new trial on all issues between all of the parties. Although the contention that the new trial should be limited to damages was advanced in the appellant's brief, it was not pressed at oral argument. and has no substance whatever. The additional trial rulings complained about need not be listed or discussed here since their controlling procedural aspects may be dealt with by appropriate amendments before the retrial takes place.

Reversed.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For affirmance*—None.