55 N.J. Super. 295 (1959)
150 A.2d 678
ROSE MARY CITRO AND ALFONSO CITRO, PLAINTIFFS-APPELLANTS,
v.
STEVENS INSTITUTE OF TECHNOLOGY, ETC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 9, 1959.
Decided April 27, 1959.
*296 Before Judges PRICE, GOLDMANN and GAULKIN.
*297 Mr. Sydney I. Turtz argued the cause for plaintiffs-appellants (Messrs. Cohen & Turtz, attorneys; Mr. Marvin Feingold on the brief).
Mr. Sidney M. Schreiber argued the cause for defendant-respondent (Messrs. Schreiber, Lancaster & Demos, attorneys; Mr. Roger F. Lancaster, of counsel).
The opinion of the court was delivered by PRICE, S.J.A.D.
By this appeal plaintiffs, in an action charging negligence and nuisance, seek to reverse a judgment of "no cause for action" entered on a jury verdict in the County Court. The judgment is challenged on the basis of alleged errors in the trial court's charge to the jury. Plaintiff Rose Mary Citro sought damages to compensate her for personal injuries alleged to have been received when she tripped and fell over a raised portion of a public sidewalk at 623 Hudson Street, Hoboken, in front of defendant's premises. The accident occurred on July 2, 1957 at about 11:30 A.M., on a clear and sunny day. Her husband Alfonso Citro sued per quod.
The record reveals that for eight years preceding the date of the accident plaintiffs had resided at 619 Hudson Street. Mrs. Citro had used the sidewalk in front of defendant's premises many times during the years of her residence at that address. She testified, however, that she did not see the raised portion of the sidewalk until after she had fallen. She further testified that she observed it while seated on a nearby low retaining wall to which she had been guided by a passer-by who assisted her immediately after she had fallen. Her husband, who was not present when the accident occurred, testified that he was familiar with the site of the accident, that there was a large crack in the pavement, and that one section of the sidewalk was "one and one-half inches to two inches" above the adjacent surface. He further testified that the condition he described had existed for several years. The passer-by, who helped plaintiff, *298 described the sidewalk area where plaintiff fell as quite uneven and that there "is a particular spot there where one section of the sidewalk juts upward in comparison with the surrounding area of sidewalk." An 11 year old nephew of Mrs. Citro who lived at 622 Hudson Street, testified that at the time of the happening of the accident he was standing near the top of the stairs on the porch of the house where he lived. He said: "Well, as I came out to the stoop, I looked across the street and my aunt was walking. As she got towards Stevens there was a piece of sidewalk raised and her foot went right onto that and she fell over frontwards." He further testified that he was familiar with the sidewalk where his aunt fell and said: "Well, I used to play near there and that was always like that for a long time."
Each side offered the testimony of an expert witness. Their respective opinions were in sharp conflict. On behalf of plaintiffs an expert, who had examined the sidewalk on May 20, 1958, was permitted over defendant's objection to testify with reference to an area covering approximately 30 feet of the sidewalk in front of defendant's premises in addition to testifying with reference to the specific place within the aforesaid area where Mrs. Citro alleged she had fallen. Asserting that he was familiar with standards of construction applicable to sidewalks built in 1943, the year defendant had constructed the sidewalk, the witness produced a sketch which was received in evidence over defendant's objection. This sketch covered the aforesaid area of 30 feet and on it the witness had delineated certain surface imperfections in the sidewalk such as cracks and holes which he stated he had observed. With reference to the area depicted on the sketch the expert expressed the opinion that there was an absence of expansion joints which condition had caused buckling, that the concrete had been mixed improperly and as a result the concrete had disintegrated leaving holes in the pavement, and that the sub-base of the sidewalk had been tamped inadequately causing the sidewalk to settle and crack.
*299 On behalf of defendant an expert, who had examined the sidewalk in question on May 1, 1958, described it as a concrete sidewalk extending from a concrete curb "bordering a planting area in front of the building nine feet to the street curbing * * * divided into two rows of slabs by a longitudinal expansion joint in about the center of the sidewalk." He characterized the walk as "a well-laid sidewalk"; that there were a few cracks and elevations in it and some evidence of disintegration. Certain trees were planted along the curb. The witness described in detail the specific area where Mrs. Citro testified that she had fallen and with reference to which certain photographs had been received in evidence on which she had designated with a cross the place where she had tripped. The witness stated that in that area there was a tree hole 46 inches wide extending from the curb toward the center of the sidewalk and a tree growing there; that some of the slabs in the vicinity of the tree had been raised by the growth of the tree roots; that "except in the area of the tree the sidewalk was in good condition"; that the slab where plaintiff asserted she fell was "right opposite the tree hole" and about three feet from the trunk of the tree; that the sidewalk slab had been raised by the root action to the extent of an inch and a half at one end and a half inch at the opposite end; that the tree which plaintiffs' expert had described as 10 to 12 inches in diameter, had roots which were heavy enough to be a disturbing factor for an area extending at least ten feet from the tree; that in his experience, which he asserted covered a period of 30 years, he had seen "hundreds of sidewalks raised by tree roots." He asserted that he found no evidence of improper tamping of the sidewalk base, no evidence of settlement and that the "concrete was the proper mix and had been properly laid." Plaintiffs' expert challenged the opinion that the tree roots caused the difference in the level of the sidewalk slabs where Mrs. Citro fell and ascribed the difference in elevation to the settlement of a slab.
*300 During the course of his charge the trial judge charged a request submitted by plaintiffs as follows:
"The traveling public has a right to presume that there is no dangerous impediment in any part of the sidewalk in absence of notice of such impediment. The principle applies to all interferences with safety of travel arising from temporary use of the sidewalk that are not normal and permanent incidents thereof and relieves persons passing along the sidewalk from any obligation to look for such interferences with travel. If the traveler sees them he must, of course, use reasonable care to avoid them, but he is not negligent merely because he does not look for them."
He then charged, among others, the following requests submitted by defendant which form the bases of plaintiffs' main attack on the judgment under review:
"The defendant has set up the defenses of assumption of risk and contributory negligence. I charge you that if you find that a portion of the sidewalk was raised, as described by the witness, open to view and not concealed, and that Mrs. Citro had looked ahead and made effective observations that made the condition of the sidewalk obvious to her, that you may find her guilty of assumption of risk or contributory negligence.

* * * * * * * *
I charge you that Mrs. Citro had the obligation of using reasonable care for her own safety as she walked along the sidewalk. If you determine that a reasonably prudent person would have observed the sidewalk condition and that Mrs. Citro did not act as a reasonably prudent person in this respect, so that as a result she was injured, then you must find for the defendant."
Plaintiffs contend that these portions of the court's charge are at variance with the principles enunciated in Krug v. Wanner, 28 N.J. 174, 183 (1958), and Taverna v. City of Hoboken, 43 N.J. Super. 160, 164 (App. Div. 1956), certification denied 23 N.J. 474 (1957). They contend that "only if plaintiff knew or was aware of the existence of a defect in the sidewalk and `failed to use reasonable care to avoid it' would the plaintiff be guilty of contributory negligence."
In Krug v. Wanner, 28 N.J., at page 180, supra, Mr. Justice Jacobs (dealing initially with the duty of an abutting *301 owner or occupier of a commercial establishment with reference to a paved sidewalk fronting such premises) said:
"* * * although the paved sidewalks fronting a commercial establishment are primarily for the use of the public generally, their condition is so beneficially related to the operation of the business that the unrestricted legal duty of maintaining them in good repair might, arguably, be placed on it. See Moskowitz v. Herman, 16 N.J. 223, 228-31 (1954). But thus far no such duty has been imposed and our State adheres to the common-law rule that abutting owners and occupiers are not ordinarily responsible for injuries resulting from sidewalk defects caused by the action of the elements or the wear and tear incident to public use. See Rupp v. Burgess, 70 N.J.L. 7 (Sup. Ct. 1903); Coll v. Bernstein, 14 N.J. Super. 71 (App. Div. 1951); Stevenson, Law of Streets and Sidewalks in New Jersey, 3 Rutgers L. Rev. 19 (1949). While this general rule of nonresponsibility has left without recourse many innocent parties who suffered serious injuries because of sidewalk defects, our courts have justly not permitted it to defeat recovery where the injured party established that the condition of the sidewalk was actually the result of the abutting owner or occupier's own wrongful conduct or constituted, in broad legal contemplation, a nuisance which the abutting owner or occupier had either originally created or had thereafter participated in maintaining. * * * Among the pertinent instances where recoveries were allowed were those where abutting owners and occupiers placed facilities such as drains, grates and cellar doors on the sidewalks for their own private uses and failed to exercise proper care to prevent them from becoming dangerous to the traveling public." (Citations omitted.)
The case last referred to involved a situation in which a facility was placed in the public sidewalk for the private use of the owner or occupier of the premises; likewise in Taverna, supra, a portion of the opinion in which case is quoted with approval in Krug (28 N.J. at page 183). In Krug, involving a claim against a property owner and its tenant by reason of plaintiff's fall asserted to have been caused by the alleged faulty condition of a cellar door placed in the public sidewalk, appears the language on which plaintiffs in the case at bar rely. They assert that it supports their criticism of the court's charge of defendant's two aforesaid requests to charge relating to contributory negligence. It is as follows:
*302 "* * * The plaintiff as a user of the sidewalk was under the obligation of exercising due care for her own protection, but in determining whether she properly discharged her obligation, recognition must be given to the judicial view that a member of the traveling public has the right to assume `that there is no dangerous impediment or pitfall' in any part of the sidewalk (Saco v. Hall, 1 N.J. 377, 382 (1949)), and is not obliged to anticipate dangerous conditions although he must exercise reasonable care to avoid them `if he sees or is aware of them.'" Krug, supra, 28 N.J. at page 183.
The opinions in Krug and Taverna do not hold that where a person seeks damages from an abutting property owner by reason of a fall allegedly caused by a defect in a public sidewalk resulting from the action of the elements or the wear and tear incident to public use he can be absolved of the duty to use reasonable care. In fact even in Krug (as well as in Taverna, supra, involving a manhole and its cover "not necessary or normal components of a public sidewalk," but "abnormal structures") the court held that plaintiff as a user of the sidewalk was "under the obligation of exercising due care for her own protection." In determining whether she had discharged that obligation however the court held that a member of the traveling public has the right to assume "that there is no dangerous impediment or pitfall" in any part of the sidewalk such as was found to exist in Saco v. Hall, supra. The further statement by the court that such a person "is not obliged to anticipate dangerous conditions although he must exercise reasonable care to avoid them `if he sees or is aware of them,'" must of necessity relate to dangerous conditions of the type and kind there being considered, i.e., those to which the court had previously referred (28 N.J. at page 180) in which "abutting owners and occupiers placed facilities such as drains, grates and cellar doors on the sidewalks for their own private uses and failed to exercise proper care to prevent them from becoming dangerous to the traveling public."
Moreover, the case does not hold that a member of the traveling public using a sidewalk can be oblivious to defects in the sidewalk even though a reasonable person could not *303 help but notice them. In Milstrey v. City of Hackensack, 6 N.J. 400, 413 (1951), the court said that the standard of conduct required of such person is the exercise of "such care for his own protection as a reasonably prudent person would have exercised under like circumstances. One's right to protection from the negligence of others carries with it the duty of reasonable care for one's own safety. The inquiry is whether the traveler, by the exercise of ordinary or reasonable care, would have discovered the danger and avoided it. At all events, it was proper to qualify the request by the instruction that the traveler has `the right to assume that there is no dangerous impediment or pitfall' in the sidewalk. Saco v. Hall, 1 N.J. 377 (1949)."
Mr. Justice Case in a dissenting opinion in Milstrey (6 N.J. at page 424) referred to the foregoing statement from Saco and clearly defined its significance. He stated:
"The court did not say, and it is clear that it did not mean to say, that such an assumption relieves a pedestrian or any other user of a public way from exercising any degree of care. The question under consideration was whether the trial court had erred in granting a judgment of nonsuit. The opinion was discussing the duty of the person responsible for the condition of the sidewalk, not the duty of the person using it."
The main issue in the Milstrey case was municipal immunity from liability. A reading of the majority and minority opinions indicates substantial concurrence in the applicable rule of contributory negligence. The real difference between the two opinions on that phase of the case was that the majority found that the correct rule had been substantially charged and that there was no plain error.
Plaintiffs in challenging the charge of the trial court assert that error was committed in even submitting the question of contributory negligence to the jury, as they assert there was no evidence to support such a defense. No objection to the court's action in dealing generally with the subject of contributory negligence was taken at trial as plaintiffs were required to do by virtue of R.R. 4:52-1. In *304 fact, plaintiffs' above quoted request on that subject which was charged by the court recognized the existence of contributory negligence as an issue in the case even though plaintiffs' and defendant's views differ as to the duty resting on plaintiffs in that regard. Plaintiffs' request, asserted in their reply brief, that we note "plain error" (R.R. 1:5-3(c); R.R. 2:5) should not be honored under such circumstances and we decline to do so.
It is to be noted also, on the basis of plaintiffs' contention, that Mrs. Citro could be contributorily negligent only if she had seen or was aware of the defect in the sidewalk and failed to take reasonable care to avoid it. There are facts in this case from which the jury could infer such knowledge. Plaintiffs repeatedly assert in their briefs that the controlling factor is that Mrs. Citro denied that she saw the defect until she was seated on the low retaining wall after the accident. They take the position that because she so asserted the jury could not find otherwise. We disagree. It is clear that in this connection the jury had the right in assaying this evidence to consider that plaintiffs had lived two doors from defendant's property for eight consecutive years preceding the accident; that Mrs. Citro had traversed the sidewalk in question many times during that period; that her husband who also used the sidewalk continually and her nephew who lived across the street were aware of the fact that there was a variance in the sidewalk level where Mrs. Citro fell. The day she fell was clear. The photographs received in evidence clearly show the elevation in the slab at the point where she marked the location of her fall. She testified that there was nothing to interfere with her vision. There was ample basis for the court's action in submitting the question of contributory negligence to the jury.
Plaintiffs, as above stated, stress that error was committed by the court in charging defendant's first above quoted request to charge. Plaintiffs made only a general objection to that request to charge and failed to comply *305 with R.R. 4:52-1 by stating distinctly the matter to which they objected and the grounds of the objection. We hold that plaintiffs are not justified in urging the "plain error" rule in this connection. However, we have considered plaintiffs' contention with reference to the particular request and find it without merit. In view of the nature of the defect and the circumstances surrounding Mrs. Citro's use of the very walk in question over a span of years the request as charged was proper. Again, plaintiffs take the erroneous position that because Mrs. Citro said she did not see the defect until after the accident the jury was bound to accept such statement and be controlled by it. We refuse to so hold.
Plaintiffs further assert that the request as charged was erroneous because the court's statement, "* * * if you find that a portion of the sidewalk was raised, as described by the witness, open to view and not concealed * * *," was such "as to make the jury believe that the `defect' was open to view and not concealed, as distinguished from the sidewalk being open to view and not concealed." We are not in accord. The court's meaning was clear.
Plaintiffs next assert that the use of the word "if" in the first quoted charge requested by defendant is to be deemed applicable only to the following portion of the phrase "if you find that a portion of the sidewalk was raised, as described by the witness, open to view and not concealed" and not to the remainder portion, i.e., "and that Mrs. Citro had looked ahead and made effective observations that made the condition of the sidewalk obvious to her * * *": that as a result the court was assuming as a fact evidence which was not present in the case. Not so. A fair reading of this portion of the charge clearly indicates that the word "if" relates to both portions of the sentence in which it was used. There is no basis for the suggestion that it invited misinterpretation.
Plaintiffs contend that the court erred in charging defendant's request to charge which is secondly above quoted. The objection made at trial was that "it would seem to cast *306 a burden upon her [Mrs. Citro] to make constant observation of the sidewalk." We disagree. On appeal plaintiffs urge, as above stated, that the charge is in conflict with the law in Krug, supra, and the other cases on which plaintiffs rely as aforesaid. We hold to the contrary. No case cited by plaintiffs holds that where the defect is a raised portion of a sidewalk or crack therein and is of a type and character revealed by the evidence before us, the court should charge that a pedestrian acquainted with the area, as was Mrs. Citro, is free from an obligation to use "such care for his own protection as a reasonably prudent person would have exercised under like circumstances." Milstrey, supra, 6 N.J. at page 413. The cases on which plaintiffs rest their contention are those which involve artificial dangers placed on the sidewalk by a defendant. Furthermore, and peculiarly pertinent to the disposition of the appeal in the instant case is Mrs. Citro's intimate knowledge of the area and her familiarity with it over a span of years. The charge was appropriate and warranted by the proofs.
Affirmed.