MORRIS ROBBINS, BY HIS FATHER AND NEXT FRIEND, CLARENCE ROBBINS, AND CLARENCE ROBBINS IN HIS OWN RIGHT, PLAINTIFFS-RESPONDENTS, v. HEDWIG THIES, ADMINISTRATRIX OF THE ESTATE OF HERMAN THIES, DECEASED, AND EDWARD BAKER, DEFENDANTS, AND PUBLIC SERVICE ELECTRIC AND GAS COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Argued October 21, 1936—Decided January 22, 1937.

For the defendant-appellant, *Henry H. Fryling* (*William II. Speer* and *James J. Higgins,* of counsel).

For the plaintiffs-respondents, *Davis & Davis* (*James Mercer Davis,* of counsel).

The opinion of the court was delivered by

TRENCHARD, J. The Public Service Electric and Gas Company (hereinafter called defendant) appeals from a judgment entered upon a general verdict against it in an action to recover damages for personal injuries to the infant plaintiff Morris Robbins (hereinafter sometimes referred to as the plaintiff) and for consequential damages to his father, Clarence Robbins, as the result of the infant coming in contact with a wire charged with electricity, maintained and controlled by the defendant at the intersection of two public highways in Burlington county.

On this appeal we are not concerned with the other defendants originally named in the suit, because a voluntary nonsuit was taken at the trial as to them.

At the trial it appeared without substantial dispute that there was a collision between two automobiles at the intersection of the two highways with the result that one or both of the cars struck a pole of the defendant at a corner of the intersection, upon which pole it maintained and controlled wires carrying electricity, and a wire which extended diagonally across the intersection was torn from the cross-arm of the pole and fell to the ground in the highway. It was that wire with which the plaintiff came in contact.

Among other allegations of negligence the plaintiffs charged in effect that the defendant was negligent in that the pole was placed in a dangerous position for persons traveling upon the highway; that the electric wire upon the pole was improperly, insecurely and negligently installed and maintained; that the material by which the wire was attached to the pole was carelessly and negligently selected and inspected, and was in an unsound and dangerous condition; that the wire was without insulation and was carelessly and negligently installed diagonally across the highways, without proper guards or protection; and that the wire, heavily charged with electricity, was allowed to lie and be upon the public highway in a highly dangerous condition.

Now the defendant contends that the trial judge erred in refusing to nonsuit the plaintiffs and to direct a verdict for the defendant. These motions were grounded upon the alle-

gations (1) that there was no evidence of negligence upon the part of the defendant which was the proximate cause of the injury to the plaintiff; (2) that the plaintiff was guilty of contributory negligence; and (3) that the plaintiff assumed the risk.

We must, therefore, inquire whether there was evidence proper to be submitted to the jury upon these issues; if so, it was not erroneous to refuse to nonsuit or to direct a verdict.

In deciding this question we must attribute to the evidence such credibility and force as the jury might.

An examination of the evidence (which was conflicting in some essentials) shows that the jury might nevertheless find established the following facts:

On August 20th, 1935, at five-one P. M., daylight saving time, there was a collision between two automobiles at the intersection of the two highways in question, with the result that one or both of the cars struck the pole of the defendant (which was within the limits of the highway, but outside of the usual traveled portion thereof) at the southeast corner of the intersection, upon which it maintained and controlled wires carrying electricity, and a wire was torn from the cross-arm of that pole, and together with the insulator to which it was attached, fell into the highway. That wire originally extended diagonally from the pole at the northwest corner of the intersection to the pole at the southeast corner. It was uninsulated and charged with two thousand four hundred volts of electricity. A bystander took hold of the insulator and dragged the wire to one side, but within the limits of the highway. It was that wire with which the infant plaintiff (eighteen years old) came in contact to his injury. The wire had been fastened to a porcelain insulator which in turn was fastened to a locust wood pin which had been driven into the cross-arm of the pole, and that pin which held the insulator was decayed, rotted and unsound, and there was no other provision to relieve the diagonal or side stress or strain upon the wire or to otherwise safeguard it. As hereinbefore stated the pole was struck at five-one P. M., daylight saving time. At five-ten P. M., the defendant was notified at its sub-station in Mount Holly (three or four miles away) through which the

electricity was furnished, that there had been an accident at the intersection in question and there was trouble with its electric line, and then having made some further investigation the informant again likewise notified the defendant at five-twenty P. M., but instead of defendant turning off the current of electricity, as it might have done, the wire in question laid upon the highway, charged with a deadly current of electricity, until about five-forty P. M. Meanwhile, the plaintiff, driving an automobile on his own business, accompanied by his mother and another, reached the scene of the automobile accident between five-twenty-seven and five-thirty P. M. Seeing that there had been a serious accident, the plaintiff stopped his car near the corner out of the way of traffic, and alighted and helped the people who were injured in the collision. He thus worked for about ten minutes when he returned to his car for the purpose of resuming his journey and as he got in front of his car at about five-thirty-eight P. M., he came in contact with the uninsulated wire which, unknown to him, was lying in the highway, received an electric shock and was knocked to the ground with the wire under him, and so received the serious injuries on account of which this suit was brought.

Now it is the duty of an electric company that maintains and controls wires charged with a deadly current of electricity in a place where it is likely that persons, known or unknown, will come in contact therewith, to use reasonable care to maintain proper insulation of such current, and this involves reasonable care in inspection for the discovery of possible impairment or defects. The test of liability to a particular person is whether injury to him ought reasonably to have been anticipated. *McGinnis* v. *Delaware, Lackawanna and Western Railroad Co.*, 98 *N. J. L.* 160; *Guinn* v. *Delaware and Atlantic Tel. Co.*, 72 *Id.* 276.

An electric company owning and controlling a high tension line along a much traveled thoroughfare, is under a duty, after knowledge of an accident and trouble along its line at a certain point, without unreasonable delay to refrain from transmitting electrical energy at that point which may cause injury to persons lawfully upon the highway, or to otherwise

safeguard such persons. *Gereghty* v. *Wagner,* 117 *N. J. L.* 174.

We believe that the evidence in the present case justified the inference of a want of reasonable care upon the part of the defendant respecting the installation, maintenance and inspection of the pole and wire in question, and in the delay in turning off the electricity or otherwise protecting the traveling public, after notice of trouble with the electric line at the intersection, and so presented a jury question as to the defendant's negligence. *Hoyt* v. *Public Service Electric and Gas Co.,* 117 *N. J. L.* 106; *Gereghty* v. *Wagner, supra.*

The defendant argues that the defendant was under no duty to anticipate injury to the plaintiff. But that we think was a jury question. We think that the jury could have found, and no doubt did find, from the manner in which the pole and wire and equipment were constructed and maintained that injury from the uninsulated wire to persons using the public highway might reasonably have been anticipated. *Hoyt* v. *Public Service Electric and Gas Co., supra; McGinnis* v. *Delaware, Lackawanna and Western Railroad Co., supra.*

With respect to the contention that defendant's negligence was not the proximate cause of the injury to the plaintiff, defendant relies upon the fact that the pole and wire were disturbed by the negligent action of one or both of the drivers of the two automobiles.

But the pertinent rule is that if a defendant is negligent, and his negligence combines with that of another, or with any other independent intervening cause, he is liable although his negligence was not the sole negligence, or the sole proximate cause, and although his negligence, without such other independent intervening cause, would not have produced the injury. *Harrison* v. *Kansas City Electric Light Co.,* 195 *Mo.* 606; 93 *S. W. Rep.* 951; 7 *L. R. A. (N. S.)* 293; *Gereghty* v. *Wagner, supra; McGilvery* v. *Newark Electric Light and Power Co.,* 62 *N. J. L.* 451; *Ferro* v. *Atlantic City Electric Co.,* 103 *Id.* 639.

Since, then, it was open to the jury to infer from the evidence that the defendant was negligent in failing to exercise due care in the construction and maintenance of the pole and

wire and equipment, and in failing to take reasonably prompt measures to safeguard the plaintiff from the wire, and that it was the concurrent and co-operating negligence of the defendant and of one or both of the drivers of these automobiles that proximately caused the injury to the plaintiff, it follows that the question of defendant's liability was not a matter of law for the trial judge, but was a question for the jury, and, hence, the motions for nonsuit and direction of a verdict on this phase of the case were properly denied.

The argument that the plaintiff was guilty of contributory negligence and assumed the risk, rests solely upon the contention that he "picked up the wire in his hand."

But the evidence with respect to that was in conflict. There was evidence from which the jury might, and no doubt did, find that the plaintiff was walking in an upright position along the highway when he involuntarily came in contact with the bare electric wire lying upon the ground, of which he had no knowledge, and was shocked, and thrown down and injured. In such state of the evidence the questions of his alleged contributory negligence and his alleged assumption of risk were for the jury. *Gereghty* v. *Wagner, supra; Brooks* v. *Consolidated Gas Co.,* 70 *N. J. L.* 211.

Upon the whole we conclude that the motions to nonsuit and direct a verdict for the defendant were properly denied.

The next contention of the defendant is that the court erred in admitting in evidence a pin claimed to be the locust wood pin on which the insulator was fastened prior to the collision.

We think it was properly admitted. The evidence tended to show that after the collision and subsequent accident to plaintiff, the end of the pin was still attached to the insulator lying in the highway: that the following morning employes of the defendant worked at the top of the pole; that they drove the remaining part of the pin in question out of the cross-arm of the pole, and it dropped to the ground; that five or six weeks later the pin offered in evidence was found "right at the base of the pole," and it was in the same condition when offered in evidence as it was when found. This and other competent evidence justified the jury in concluding

that the pin admitted in evidence was a part of the pin origi-
nally used to hold the wire in question and that such pin was
"decayed and rotted and unsound."

The next point argued by the defendant is that the judge
erred in refusing to permit the witness Pennock on cross-
examination to answer the question: "Whom did you talk
with there?"

The witness had testified on direct examination by the
plaintiff to a call over the telephone made by her to the sub-
station of the defendant and had been fully cross-examined
in respect thereto. The witness was then asked on further
cross-examination: "Did you telephone to the Public Ser-
vice Gas and Electric again?" and she answered, "I did."
Then followed the question which was overruled, namely,
"Whom did you talk with there?" That question was objected
to by the plaintiff on the ground that it related to some sub-
sequent conversation about which the witness had not been
interrogated on direct examination. It was overruled by the
court in the following language: "I think your cross-
examination on such a subject is beyond the bounds of direct
examination and therefore improper cross-examination.
There is nothing to prevent you from eliciting from this
same witness what you want on your direct examination of
her."

We find no prejudicial error here. The general rule is
that cross-examination should be confined to matters that
have been brought out on the direct examination (*State* v.
*Skillman,* 76 *N. J. L.* 464) and if the cross-examining party
wishes to obtain the testimony of the witness as to matters
not proper on cross-examination, he must do so by calling
the witness to the stand as his own and subjecting him to
direct examination in regard thereto. *State* v. *Zeilman,*
75 *Id.* 357.

It is next said that the court erroneously refused to permit
Emma J. Sapp, a witness produced by the defendant, to tes-
tify on direct examination in answer to the following ques-
tions: "As a result of that conversation did you learn whether
or not the Robbins boy had been hurt before you arrived
there?" Immediately preceding the question which was

objected to, the witness was asked: "*Q*. Did you hear any conversation while you were at the scene of the accident, do not tell me what it was? *A*. Yes, sir. *Q*. With whom? *A*. With Mr. Sharp. *Q*. Did you hear him talking? *A*. Yes." Then follows the question excluded. Counsel for the defendant explains to the court: "She overheard the conversation, I understand." The court: "Some statement made by a Mr. Sharp when she arrived there some time a little later than five-fifteen?" Mr. Higgins: "Yes, the conversation was later that is true." The court: "The objection will be sustained."

It seems the question called for hearsay, for which there was no legal justification. But moreover, after the objection was sustained, counsel for defendant then said: "I would like also to offer it for the purpose of fixing the time when the accident happened." The court then said, "I will permit you to show what time she heard something said." Thereupon counsel for defendant said: "That is all," and he did not avail himself of any further examination.

We conclude that there was no prejudicial error here, nor in any other action of the trial judge in dealing with testimony to which our attention has been called.

The defendant's next point is that the trial judge erred in refusing to charge defendant's request No. 17 as drawn.

We think there was no prejudicial error here. We think the request as drawn was too narrow in that it seemed in effect to limit the right to recover to proof that the method of construction did not conform to that in general use, and was therefore faulty, since there was other evidence of negligence which, if believed by the jury, would have justified recovery.

Instead of charging the request as drawn, the judge said: "The plaintiffs must prove negligence on the part of the defendant company as alleged, but they are not obliged to specifically prove that the defendant's construction did not conform with the methods of construction adopted and used by well regulated electric companies. The test is whether the defendant company exercised or failed to exercise due and reasonable care in the circumstances as they existed at the

time of the occurrence of this mishap, and I have already instructed you with regard to the degree of care to be exercised."

We think that was right. *Gereghty* v. *Wagner, supra.* The judge had theretofore charged properly as to the degree of care required.

The next group of points made by the defendant relate to the qualifications of two expert witnesses.

The trial judge decided, in view of the evidence respecting their qualifications, that both were qualified, and of this the defendant complains.

Now the qualifications of an expert witness are in the first instance to be determined by the trial judge, and his determination in that matter will not be disturbed where it is supported by evidence, unless shown to be clearly erroneous as a matter of law. The weight and value of such expert testimony when given is for the jury. *Farrell* v. *New Jersey Power and Light Co.,* 111 *N. J. L.* 526.

Our examination of the testimony satisfies us that the evidence as to the qualifications of the witnesses in question justified the trial judge in his determination, and was not erroneous as a matter of law. So therefore we see no merit in these points.

The next point argued by the defendant is that the judge erred in refusing to charge that the right of automobiles to use the public highways "was restricted to the facilities for travel which were afforded by the usable portions of the roads."

But that is not the legal rule, and hence the request was properly denied. *Opdycke* v. *Public Service Railway Co.,* 78 *N. J. L.* 576.

Lastly it is argued that the judge erred in refusing to charge a request as drawn that "it was the duty of the drivers of automobiles to exercise that degree of care and caution so that they would operate their cars on that portion of the road which was allotted to vehicular traffic."

We think there was no prejudicial error in such refusal since the judge in response thereto properly charged the essentials thereof in substance and effect.

The judgment will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, CASE, BODINE, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, COLE, JJ. 14.

*For reversal*—None.