JOSEPH MONACO, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF MARY MONACO, DECEASED, PLAINTIFF-APPELLANT, v. COMFORT BUS LINE, INC., A CORPORATION, DEFENDANT, COUNTY OF PASSAIC AND COUNTY OF BERGEN, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.

ABE STAHL, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF LILLIAN STAHL, DECEASED, PLAINTIFF-APPELLANT, v. COMFORT BUS LINE, INC., A CORPORATION, DEFENDANT, COUNTY OF PASSAIC, A BODY POLITIC INCORPORATE OF THE STATE OF NEW JERSEY, AND COUNTY OF BERGEN, A BODY POLITIC INCORPORATE OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued May 5, 1946—Decided October 4, 1946.

For the appellant Joseph Monaco et al., *Ward & McGinnis* and *Louis C. Friedman* (*Peter J. McGinnis,* of counsel).

For the appellant Abe Stahl et al., *Feder & Rinzler* (*Jack Rinzler,* of counsel).

For the respondent County of Bergen, *Winne & Banta* (*Walter G. Winne,* of counsel).

For the respondent County of Passaic, *Charles C. Stalter.*

For John Olczak, administrator *ad prosequendum,* &c., et al., as *amicus curiæ, John G. Dluhy.*

Joining in the brief as attorneys for other plaintiffs: *David T. Wilentz, Manfield G. Amlicke, Cole, Morrill & Nadell, Winthrop Watson, Davies & Davies, John O. McGuire, Joseph Teich, Lee M. Skolkin, August A. Azzolino* and *Riskin & Riskin.*

The opinion of the court was delivered by

OLIPHANT, J. These cases arose as the result of an automobile bus accident which occurred March 20th, 1944, at 8:00 A. M., on the Market Street bridge over the Passaic River in which nineteen persons lost their lives.

The suits were brought by duly appointed administrators *ad prosequendum* against the Comfort Bus Line, Inc., the owner of the bus, and the Counties of Bergen and Passaic who had jointly constructed the bridge on which the bus was traveling. The cases, by order of the trial judge and with

the consent of counsel for all parties, were consolidated for trial. This resulted in directed verdicts in favor of the respondents at the close of the case and of verdicts by the jury of no cause of action in favor of the Comfort Bus Line, Inc., against both plaintiffs. A new trial was granted the plaintiffs as against the bus line. These appeals are taken from the action of the trial court with respect to the suit against the two counties.

The facts, in brief, disclose the following with respect to the happening of the accident. The plaintiffs' intestates were passengers for hire on the bus which was proceeding over the bridge at a speed of from five to twenty-five miles per hour when it, without explanation as to cause, suddenly turned at a forty-five degree angle, mounted the curb and went over the pedestrian's sidewalk, struck a pedestrian on that sidewalk, crashed into the bridge rail and plunged into the river. The wheels of the bus were turning as it left the bridge and it was in second gear when raised from the river. At the time of the accident there was a slight fall of snow on the roadway. The bridge, construction of which was begun in 1929 and finished in 1931, was of the Rall bascule type and was about twenty feet above the water. It was composed of three sections, two of which were fixed spans, and a center one that was movable and could be raised like a cellar door. The roadway of the bridge used for vehicular traffic was thirty feet wide and on each side of this roadway, separated therefrom by a wooden curb was a pedestrian sidewalk ten feet wide. On the outer side of each sidewalk was a guard rail. The standard specifications of the American Association of Highway Officials with respect to bridge construction called for a curbing at the side of the roadway nine inches in height whereas the curb on this bridge was between 7⅝ inches and 8⅜ inches, and according to those same specifications the guard rail was deficient in strength. The bridge was designed to carry twenty ton trucks which it safely did. The bus involved in the accident weighed 12,600 pounds.

The complaint in each case charged the counties with negligence in the construction, erecting, rebuilding and repairing of the bridge with respect to the curb between the roadway

and the pedestrian walk and also the guard rail, and appellants argue as there was testimony adduced that the curb and railing did not meet minimum standard construction requirements a fact question was presented which precluded a direction of a verdict in favor of the counties by the trial court. Each complaint also contained a count charging the counties with the construction and maintenance of a nuisance by reason of the character of the curb and guard rail of the bridge.

We conclude there was no error on the part of the trial court in directing the verdicts appealed from.

These causes of action arose solely by virtue of the provisions of *R. S.* 27:19–10. The trial judge acted properly under the facts in limiting the duty of respondents to that of constructing the bridge in a reasonably safe condition for ordinary public travel and eliminating from the case the question of its maintenance.

The original Bridge Act was that of November 5th, 1798, entitled "An act respecting bridges" (*Pat., p.* 333). It provided for the building, rebuilding and repair of bridges between counties and this provision in substance has been carried into *R. S.* 27:9–1. This act of 1798 appears in "An act respecting bridges," revision approved April 10th, 1846 (*Rev.* 1846-7, *p.* 535) with slight amendments respecting the costs of erecting, rebuilding and repairing thereof.

In *Board of Chosen Freeholders* v. *Strader,* 18 *N. J. L.* 108, decided in 1840, it was held that no action lies by an individual against a Board of Chosen Freeholders for injuries sustained in consequence of their not completing or keeping in repair a county bridge or abutments. This case was followed by that of *Cooley* v. *The Chosen Freeholders of Essex,* 27 *Id.* 415, which was decided in the February term of 1859, and basing its decision on *Freeholders* v. *Strader, supra,* it was there held, in a suit by plaintiff to recover damages for an injury sustained by reason of an alleged defect in a public bridge, that "no action lies by an individual against the Board of Chosen Freeholders for injuries sustained in consequence of their not completing or keeping in repair a county bridge."

Undoubtedly as the result of that case, the following year by chapter 122 of the laws of 1860, there was enacted a supple-

ment to the act entitled "An act respecting bridges" approved April 10th, 1846, which is the statute above referred to as appearing in the revision of 1846-7. This supplement gives a right of action to one injured by the wrongful *neglect* of a Board of Freeholders to *erect, rebuild* or *repair* a bridge. This act appears as section 1309 of "An act concerning counties" (*Pamph. L.* 1918, *ch.* 185), and became 27:19–10 in the revision of 1937. Its original passage in 1860 was to make actionable that which was not so theretofore. From this history it will be seen that the only right of action, if any, now had by an individual for damages by reason of injuries sustained on a bridge is limited to the right given by *R. S.* 27:19–10. This section refers specifically to "construction, erection, rebuilding or repairing" of a bridge. After construction a municipality is not required to alter or rebuild a bridge in whole or in part to meet all perils or hazards created by changing traffic conditions. The extent of its duty is to construct and maintain in a reasonably safe condition for ordinary public travel. *Murphy et al.* v. *The Board of Chosen Freeholders,* 57 *N. J. L.* 245. The duty to maintain is co-extensive with that of construction. These defendants were charged with a duty to make the bridge reasonably safe having in mind those occurrences which a reasonable person might anticipate or which might reasonably be expected to result in the ordinary course of human experience. An occurrence such as happened in these cases was not to be reasonably anticipated or foreseen and therefore there was no legal duty to guard against it.

The rule, supported by the great weight of authority is stated in 8 *Am. Jr., p.* 939, as follows: "Courts have almost universally reiterated the definition of the fundamental duty to provide railings as being the exercise of that care necessary to make ordinary travel reasonably safe at the point where they are erected." A curb on a bridge falls within this same category. Ordinary travel being that which should be reasonably anticipated and apprehended does not include an instance of a bus being driven or propelled up over a curbing and across a sidewalk. Ordinary travel contemplates an automobile being driven and kept on the roadway. A roadway

safe for all ordinary hazards of travel was provided for by the counties and in that they performed their full duty. Any duty the counties owed could not be extended to the character of curb or railing which would be necessary to prevent an automobile out of control from leaving the roadway and then the bridge. There is no duty on the part of county authorities under the applicable statute to make bridges safe for automobiles which are out of control. If there was such they would be required to exercise extraordinary rather than ordinary care to prevent injuries thereon. As stated, the defendant's duty was simply to provide for the usual and ordinary risks of travel. *Corley* v. *Cobb County,* 93 *S. E. Rep.* 1015 (*Ga.*).

In *Roberts* v. *Town of Easton,* 238 *N. Y.* 420; 144 *N. E. Rep.* 667, the Court of Appeals of New York, composed of eminent jurists, enunciated what we deem to be the sound and proper rule to be applied to the question here presented. It was there said "Defendant was not obliged to construct a barrier sufficiently strong to hold a heavy car from going over such a declivity. All that was required of it was that it should erect such a railing, if any, as would be a sufficient protection for travel generally. The town was not bound to exercise extraordinary care to guard against unusual accidents. 'The limit of duty on the part of a town with regard to the condition of its highways falls far short of making them absolutely safe, under all circumstances, even for those who use them properly.' The risk here was not enhanced by the lack of any ordinary barrier. It arose out of a combination of unforeseen circumstances against which the exercise of ordinary care would have afforded no protection. The rule of duty in such cases is one of reasonableness. While the general use of motor vehicles has developed a new class of risks, it is not incumbent on the towns to anticipate and guard against every danger that may attach to the operation of automobiles over country highways. To impose on towns the burden either of constructing substantial barriers at every point of possible danger, or of paying damages when unusual accidents occur which such barriers might have prevented, would be to advance the present measure of liability beyond the rule of ordinary care into the field of insurance against accidental

injury or death. *Where it is unreasonable to charge the town with the duty of maintaining barriers sufficient to prevent all accidents, the court will declare non-liability as a matter of law."* (Italics added.)

The theory of appellants, carried to its logical conclusion, would charge these respondents with the duty to construct this bridge with a curbing of sufficient height and a railing of sufficient strength to have prevented automobiles from leaving the roadway and the bridge under all circumstances. They were charged with no such duty and the direction of verdicts in their favor was proper. The legislature in enacting the legislation giving a right of action for injury or damage due to the neglect of a county in the construction of a bridge never contemplated the uses to which they are put in these times. If it was the legislative intention that bridges should be constructed in a manner to prevent all injury and damage resulting from their use it should be so declared.

There was likewise no error in the action of the trial court in striking out the counts in the complaints charging the respondents with the construction and maintenance of a nuisance. As heretofore pointed out the only right of action was that afforded by the statute, *R. S.* 27:19–10. Nuisance is a common law action and differs from negligence in its nature and consequences. "To render a person liable either on the theory of nuisance or negligence there must be some breach of duty on his part. But liability for negligence is based on a want of proper care, while, ordinarily, a person who creates or maintains a nuisance is liable for the resulting injury to others regardless of the degree of care or skill exercised to avoid such injury." 39 *Am. Jr.* 282. The statute specifically confines the right of action to acts of "neglect" or negligence, the failure to use due care. If these actions could be based upon a nuisance, then the statute would be wholly unnecessary and the right to recovery could be based upon nuisance as such and not upon the statute.

There is a further cogent ground, in these cases, upon which the action of the trial court, in directing verdicts in favor of the respondents, was properly based. It was incumbent on plaintiffs, in addition to proving negligence on the part of

defendants, to prove affirmatively that such negligence, if any, was a proximate cause of the accident. Without doubt the primary cause was the action of the operator of the bus, his loss of control thereof or some other unexplained reason, for turning sharply and taking the course it did. Any failure to provide adequate curbing or railings was not a cause but a fortuitous condition. Under the proofs adduced the negligence complained of was not even a concurring cause of the accident. As a prerequisite to the cases going to the jury it was incumbent upon plaintiffs to show that if the curb and railing had met the standards contended for the accident probably would have been prevented. The record is barren of any such testimony. The jury could not have been permitted to speculate on this phase of the issues.

In view of the conclusions heretofore expressed it is unnecessary for us to consider the other points raised on the appeals.

The judgments are affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, PARKER, BODINE, HEHER, OLIPHANT, WACHENFELD, WELLS, RAFFERTY, MCGEEHAN, McLEAN, JJ. 10.

*For reversal*—DONGES, PERSKIE, DILL, JJ. 3.