8 A.3d 796 (2010)
417 N.J. Super. 74
John SEALS and Julia Seals, his spouse, Plaintiffs-Respondents/Cross-Appellants,
v.
COUNTY OF MORRIS, Defendant-Respondent/Cross-Appellant, and
Township of Washington, State of New Jersey, Ray Drake, Jack Lanzaro, Officer Leonardi, Verizon, AT & T, Cingular, Bell System, Bell Telephone, and Sprint, Defendants, and
Jersey Central Power & Light, First Energy Corporation, Defendants-Appellants/Cross-Respondents.
John Seals and Julia Seals, his spouse, Plaintiffs-Respondents/ Cross-Appellants,
v.
County of Morris, Defendant-Appellant/Cross-Respondent, and
Township of Washington, State of New Jersey, Ray Drake, Jack Lanzaro, Officer Leonardi, Verizon, AT & T, Cingular, Bell System, Bell Telephone, and Sprint, Defendants, and
Jersey Central Power & Light, First Energy Corporation, Defendants-Respondents.
Nos. A-5433-08T3, A-0475-09T3.
Superior Court of New Jersey, Appellate Division.
Argued March 3, 2010.
Decided November 24, 2010.
*797 Ronald A. Berutti argued the cause for appellants/cross-respondents (A-5433-08T3) / respondents (A-0475-09T3) Jersey Central Power & Light and First Energy Corporation (Weiner Lesniak, L.L.P., attorneys; Mr. Berutti and Arnold Gerst, Parsippany, of counsel; Mr. Berutti, on the brief).
William L. Gold, West Orange, argued the cause for respondents/cross-appellants John Seals and Julia Seals (A-5433-08T3 and A-0475-09T3) (Bendit Weinstock, attorneys; Gerald Compeau, Morristown, of counsel; Mr. Gold, on the brief).
Gary C. Algeier, Assistant County Counsel, argued the cause for respondent/cross-appellant (A-5433-08T3) / appellant/cross-respondent (A-0475-09T3) County of Morris (Daniel W. O'Mullan, Morris County Counsel, attorney; Mr. Algeier, of counsel; Kathryn J. Kingree, Morristown, on the brief).
James B. Ventantonio, Warren, argued the cause for amicus curiae Verizon New *798 Jersey, Inc. (A-5433-08T3 and A-0475-09T3) (Ventantonio and Wildenhain, P.C., attorneys; Mr. Ventantonio, on the brief).
Britcher, Leone & Roth, L.L.C., attorneys for amicus curiae New Jersey Association for Justice (A-5433-08T3 and A-0475-09T3) (E. Drew Britcher, Glen Rock, and Jessica E. Choper, on the brief).
Before Judges FISHER, SAPP-PETERSON and ESPINOSA.
The opinion of the court was delivered by
SAPP-PETERSON, J.A.D.
In these appeals, we consider the liability, if any, of defendants, Jersey Central Power and Light and First Energy Corporation (JCP & L), for injuries sustained by plaintiff,[1] John Seals, whose vehicle struck a utility pole owned by JCP & L, and whether the provisions of the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, serve as a bar to any claim against defendant, County of Morris (the County). The motion judge determined that because there was no ordinance, resolution, or regulation in place for JCP & L to follow at the time it placed its pole, the immunity granted to utility companies under Contey v. New Jersey Bell Telephone Co., 136 N.J. 582, 643 A.2d 1005 (1994), does not apply; JCP & L's liability must therefore be analyzed under ordinary negligence principles; and disputed factual issues precluded the grant of summary judgment. The motion judge also concluded that because the County took no action to regulate the location of the utility pole, the immunity provisions under the TCA do not apply and the question of its negligence must be resolved by applying ordinary principles of negligence. We reverse the denial of summary judgment to JCP & L. We vacate the order denying summary judgment to the County and remand for further proceedings. We affirm the denial of summary judgment to plaintiff.
During snowy weather in the early morning hours of February 7, 2003, John Seals lost control of his Ford pickup truck while traveling eastbound on Route 513, a county road, in Washington Township (Township). The truck skidded across the opposite lane of traffic and collided with a JCP & L utility pole, Pole # 617, which was located next to the road on private property. The County maintains a right-of-way easement over this portion of the property. Although the parties dispute whether JCP & L possesses a valid easement to have placed Pole #617 in its current location,[2] the property owner granted JCP & L's predecessor-in-interest an easement to place a pole in 1928. The pole was first installed sometime between 1928 and 1937[3] as part of a distribution *799 line of poles holding up electrical wires along Route 513.
At the time the utility pole was placed, Route 513 was an existing road that had previously been part of an old stagecoach road that was never designed or engineered by the County. All of the poles placed along Route 513, including Pole # 617, were installed by JCP & L without County consultation or involvement. JCP & L contends that it was granted an easement "to place its pole in the area of Pole #617" in 1928. JCP & L engineering supervisor, Richard Santoro (Santoro), testified during his deposition that JCP & L does not conduct any specific studies to determine whether the poles are in a safe location from a traffic engineering perspective. Rather, JCP & L "reacts" to any direction given by the governing body in terms of pole location or relocation. Santoro stated that even if vehicle safety is an issue, unless the governing body requests that a pole be moved, JCP & L will "typically leave it alone."
According to the County, it does not have its own police force and does not investigate traffic accidents; however, it is typically notified by the Township police whenever a pattern of accidents occurs on one of its roads. Prior to plaintiff's accident, the Township had never notified the County of a pattern of accidents regarding Pole # 617, although discovery revealed that at least three accidents had occurred in the curved area of Route 513 near Pole # 617 between 1989 and 2003. All three accidents involved motorists skidding and losing control of their vehicles on a wet road surface. Nor did the County routinely receive reports from JCP & L when its poles were involved in accidents. When asked during his deposition whether the County required notification, Santoro responded "[s]ometimes yes and sometimes no." JCP & L acknowledged it keeps at least some records of the accidents and confirmed that it does not report the accidents to the County. Additionally, JCP & L does not notify the County when it undertakes any work on a pole or installs a pole. Rather, JCP & L contacts the property owner directly to seek an easement to install a pole. The parties dispute whether Pole #617 has remained in substantially the same location since it was first installed or whether JCP & L has moved the pole closer to the roadway.[4]
On March 30, 2007, JCP & L moved for summary judgment, claiming that pursuant to Contey, it owed no duty to plaintiffs. The motion judge entered an order on May 25, 2007, granting partial summary judgment in its favor, but later vacated this order after both the County and plaintiffs prevailed on their respective motions for reconsideration.
In late spring 2008, all three parties moved for summary judgment. The trial court heard arguments on August 12. The County argued that it was immune from liability under the TCA. The motion judge disagreed and denied the motion. She reasoned that because the County took no action to regulate the location of the poles, it was not entitled to sovereign immunity and instead was "subject only to ordinary principles of negligence in determining liability for the case." JCP & L's motion was based upon its position that since the pole was not in the roadway or in plaintiff's direction of travel, the accident was not reasonably foreseeable and, thus, beyond the scope of any duty JCP & L owed *800 to plaintiff. The motion judge denied the motion, reasoning that the foreseeability of the accident was a triable fact and that a jury should decide how far JCP & L's duty extended to plaintiffs. She also denied plaintiffs' motion without explanation.
Thereafter, the court denied the County's motion for reconsideration and the County then sought leave to file an interlocutory appeal, which we denied. JCP & L then moved for reconsideration of the October 16, 2007 order vacating the court's May 25, 2007 order granting summary judgment in its favor pursuant to Contey. After considering JCP & L's extensive argument that Contey placed a duty on the County to conduct highway safety studies regarding the locations of utility poles, the motion judge expressed the opinion that she could not "find in Contey or any statute that anybody has brought to my attention that says that a municipality, or a county, or whatever public entity it is that controls the road in question, has a duty to conduct a safety study." She continued:
They say it at least five times through this case that highway planners, and engineers that are employed by public bodies are in a much better position to determine where a . . . pole is going to be safely located. And . . . I agree.
But if this case is the case that signals to municipal entities that they have a duty to conduct this . . . highway safety study, then I . . . just think the message doesn't really get through, and it would be a rather strange place to give that message, when the public entity [in the Contey case] [was] no longer even in the case, probably filed no briefs.
The judge elaborated, "[t]he [C]ourt knows how to hand out duties. And if that's a duty . . . it's really a soft[-]pedaled hand[ ]out." She then concluded:
[W]hen a public utility places a pole in compliance with a plan that has been sent [sic] forth . . . by a public utility, by a public entity, that the public utility is not liable. . . .
. . . .
. . . [I]f there are no standards set forth for a public utility, then the public utility is going to be subject to [a] straight negligence standard.
The judge memorialized her decision by a written order dated May 15, 2009. Thereafter, the court denied plaintiffs' motion for partial summary judgment against JCP & L and the County.
On July 6, 2009, we granted JCP & L's motion for leave to appeal the trial court's May 15 order and, by order dated September 25, 2009, we granted the County's motion for reconsideration of our March 24, 2009 order denying it leave to appeal. We granted the County leave to appeal and consolidated its appeal with JCP & L's pending interlocutory appeal. Also on September 25, we granted Verizon's motion to appear as amicus curiae. On October 30, 2009, we granted plaintiffs' motion for leave to file a cross-appeal. On December 1, 2009, we granted the motion of New Jersey Association for Justice (NJAJ) to appear as amicus curiae.
On appeal, JCP & L raises the following points for our consideration:
POINT I
THE LOWER COURT'S DECISION HAS CREATED A DISINCENTIVE FOR PUBLIC BODIES TO FULFILL THEIR PUBLIC SAFETY OBLIGATIONS, AND HAS PLACED A BURDEN ON UTILITY COMPANIES TO GET INTO THE HIGHWAY SAFETY BUSINESS INSTEAD, CONTRARY TO CONTEY [, supra, 136 N.J. 582, 643 A.2d 1005].
A. UTILITY COMPANIES HAVE NOT HAD A DUTY TO DRIVERS LEAVING THE ROADWAY *801 SINCE LONG BEFORE CONTEY WAS DECIDED.
B. CONTEY REJECTED THE ARGUMENT THAT AN ORDINARY NEGLIGENCE STANDARD APPLIES TO JCP & L'S POLE.
C. THE CONTEY DISSENT RECOGNIZES THAT UTILITIES HAVE BEEN GRANTED IMMUNITY FOR ANY RESPONSIBILITY FOR POLE PLACEMENT.
D. THE DUTY TO FORESEE.
E. THE TRIAL COURT MISCONSTRUES CONTEY BY LIMITING THE PUBLIC BODY'S DUTY AND BY IMPOSING A DUTY ON JCP & L TO ENGAGE IN HIGHWAY ENGINEERING, DESIGN AND SAFETY.
POINT II
IF THE LOWER COURT IS AFFIRMED, THE HOLDING MUST BE PROSPECTIVELY APPLIED.
POINT III
UNDER ANY CIRCUMSTANCE, JCP & L CANNOT BE HELD LIABLE SINCE ITS POLE WAS LOCATED IN THE SAME, OR SUBSTANTIALLY THE SAME, LOCATION FOR OVER TEN YEARS SUCH THAT IT HAD APPROVAL IN WRITING FOR THE PLACEMENT OF ITS POLE AS A MATTER OF LAW.
In its cross-appeal, the County raises the following points:
POINT [I]
THIS CASE IS DISTINGUISHABLE FROM CONTEY v. NEW JERSEY BELL TELEPHONE CO., 136 N.J. 582 [643 A.2d 1005] (1994).
POINT [II]
PUBLIC POLICY PRECLUDES THE IMPOSITION OF RESPONSIBILITY FOR THE SAFETY OF THE LOCATION OF ALL ELECTRICAL UTILITY POLES WITHIN THE COUNTY ON THE COUNTY OF MORRIS.
POINT [III]
MORRIS COUNTY IS ENTITLED TO SUMMARY JUDGMENT [PURSUANT] TO THE PROVISIONS OF THE NEW JERSEY TORT CLAIMS ACT [N.J.S.A. 59:1-1 TO 12-3].
POINT [IV]
MULTIPLE IMMUNITIES WARRANT A SUMMARY JUDGMENT IN FAVOR OF THE COUNTY OF MORRIS.
Plaintiffs, in their cross-appeal, raise the following points:[5]
POINT XII
IN LIGHT OF THE TRIAL COURT'S PROPER INTERPRETATION OF CONTEY, JCP & L, BY ITS OWN ADMISSIONS, IS NEGLIGENT AS A MATTER OF LAW.
POINT XIII
ONCE A PARTY'S EXPERT OPINES CONTRARY TO THE POSITION OF THE PARTY, THE EXPERT'S OPINION IS BINDING ON THAT PARTY.
POINT XIV
JCP & L HAS SIMPLY BREACHED ITS DUTY WITH RESPECT TO PLACEMENT OF POLES.

I.
The standard governing the scope of our review of a trial court's grant or denial of a motion for summary judgment is de novo, using the same standard as that employed by a trial court. Turner v. *802 Wong, 363 N.J.Super. 186, 198-99, 832 A.2d 340 (App.Div.2003). We must determine whether, when the facts are viewed most favorably to the non-moving party, a genuinely disputed issue of fact exists sufficient to have defeated the summary judgment motion. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995). Summary judgment is only appropriate if, in view of all pleadings, depositions, answers to interrogatories and admissions to file, together with any affidavits, there exists no genuine issue as to any material fact. R. 4:46-2(c). If, after viewing the competent evidence, "there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a `genuine' issue of material fact for purposes of" summary judgment. Brill, supra, 142 N.J. at 540, 666 A.2d 146.

II.
The liability of public utilities arising out of the placement of their utility poles was traditionally analyzed by applying principles of ordinary negligence, with the question of foreseeability being key to the imposition of liability. See Robbins v. Thies, 117 N.J.L. 389, 393, 189 A. 67 (E.A. 1937) ("The test of [electric company's] liability to a particular person [who has come in contact with wire charged with deadly current] is whether injury to [such person] ought reasonably to have been anticipated." (citing McGinnis v. Del., Lackawanna & W. R.R. Co., 98 N.J.L. 160, 163, 119 A. 163 (E.A.1922); Guinn v. Del. & Atl. Tel. Co., 72 N.J.L. 276, 277-78, 62 A. 412 (E.A.1905))). In Oram v. New Jersey Bell Telephone Co., 132 N.J.Super. 491, 494-95, 334 A.2d 343 (App.Div.1975) (citing Monaco v. Comfort Bus Line, Inc., 134 N.J.L. 553, 557, 49 A.2d 146 (E.A.1946)), we held that utility companies "need only anticipate ordinary travel which `contemplates an automobile being driven and kept on the roadway.'" Id. at 494, 334 A.2d 343 (quoting Monaco, supra, 134 N.J.L. at 557, 49 A.2d 146).
More than fifty years after Robbins, and nearly twenty years after we decided Oram, our Supreme Court, in Contey, had occasion to once again consider the extent to which a legal duty may be imposed upon a utility company arising out of injuries to motorists. Contey, supra, 136 N.J. at 583-84, 643 A.2d 1005. In Contey, a motorist was injured when her vehicle struck a utility pole after she missed an unmarked turn in the roadway. She commenced a personal injury action against the State of New Jersey, the County of Bergen, and the Borough of Franklin Lakes. Additionally, she named as defendants New Jersey Bell Telephone Company (NJ Bell), which owned the utility pole, and Rockland Electric Company, to whom NJ Bell had granted permission to locate its wires on the utility pole. Id. at 583-84, 643 A.2d 1005. She settled or voluntarily dismissed the claims she brought against the public entities and continued her claims against the utility companies. Id. at 584, 643 A.2d 1005. The trial court granted summary judgment to the utility companies, and in an unpublished opinion, we affirmed on appeal based upon our decision in Oram. Because of a dissenting opinion, plaintiff appealed as of right. Ibid.; see also R. 2:2-1(a)(2).
The Court framed the question of the utility companies' liability as "`whether the asserted negligence in the placement of the pole is to be considered as the proximate cause, or whether the operation or movement of the colliding vehicle may be said to be the real cause, the collision with the pole being merely incidental.'" Id. at 584, 643 A.2d 1005 (citing Padgett v. W. Fla. Elec. Coop., Inc., 417 So.2d 764, 766 (Fla.Dist.Ct.App.1982) (quoting T.C. *803 Williams, Annotation, Injury to Traveler From Collision With Privately Owned Pole Standing Within Boundaries of Highway, 3 A.L.R.2d 6, 56 (1949))). The Court approached the resolution of the question by engaging in a value determination based upon an analysis of public policy and fairness. See Acuna v. Turkish, 192 N.J. 399, 414, 930 A.2d 416 (2007), cert. denied, ___ U.S. ___, 129 S.Ct. 44, 172 L.Ed.2d 22 (2008).
The public policy and fairness considerations that determine whether a duty is to be imposed were addressed by the Court in its decision in Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 625 A.2d 1110 (1993), decided in the term that preceded the Court's decision in Contey. Those considerations require weighing: (1) "the relationship of the parties"; (2) "the nature of the attendant risk"; (3) "the opportunity and ability to exercise care"; and (4) "the public interest in the proposed solution." Id. at 439, 625 A.2d 1110.
Applying these factors, the Contey Court noted that statistics disclosed that "[a]pproximately 65,000 injuries occur annually because of vehicle-utility-pole accidents." Contey, supra, 136 N.J. at 587, 643 A.2d 1005 (citing Ronald D. Hughes, U.S. Dep't of Transp., Breakaway Timber Utility Pole Installations in Kentucky 2 (1991)). From those statistics, the Court determined that the risk of harm to the public was "great." Id. at 588, 643 A.2d 1005. Next, the Court reasoned that "because the risk is great, the public interest in the solution is very great." Ibid. Further, referring to N.J.S.A. 48:17-8, the Court noted that a utility company has no right to unilaterally determine the location of a pole, requiring in the first instance, permission from the property owner to place a pole on the owner's property. Ibid. The Court also referenced N.J.S.A. 48:17-11, which requires utility companies to erect poles in accordance with ordinances and resolutions adopted by the local municipality or board of freeholders. Ibid. Finally, the Court observed the increased role of governmental bodies in paving highways and installing curbs. Id. at 586, 643 A.2d 1005.
After weighing all of these factors, the Court expressed its belief that
responsibility for the safety of motorists should rest with those who own, control, and maintain the thoroughfare. Although utility companies have a duty to foresee that motorists will leave the traveled portion of the highway, the governmental bodies and highway planners are best suited to determine how the utilities should fulfill that duty. Those public bodies are in the best position to provide and to enforce standards and regulations governing utilities. Utilities do not have the right to locate poles wherever they deem expedient. Public bodies may by their ordinances and regulations require the relocation, removal, shielding, or redesign of poles that do not meet safety standards.

[Id. at 590, 643 A.2d 1005 (emphasis added).]
To the extent there is any doubt that this language reflects the Court's intent to impose upon governmental entities the duty to establish standards for the initial placement and continued existence of utility poles along the roadways in this State, later in the opinion the Court discussed the fact that the pole the plaintiff's vehicle struck had been struck on two occasions prior to the plaintiff's collision. Ibid. The Court observed that a warning sign was subsequently installed in the area, but expressed the view that the public entity or utility company should have taken corrective action before the plaintiff's accident and that under such circumstances, it "might be inclined to hold the utility company *804 liable." Ibid. In declining to do so, however, the Court stated that "highway planners, not utility managers, are best equipped to determine the location and design of fixtures in or near a right-of-way." Ibid.
In our view, the fact that no governmental entity undertook the approval of JCP & L's placement of Pole # 617, in advance of its placement, does not automatically impose a legal duty upon JCP & L to the motoring public, as plaintiff and the County would urge. To reach such a conclusion could result in governmental entities, who the Court has determined are best equipped to safeguard the motoring public, avoiding that duty by simply doing nothing.
Although Pole #617 was originally placed without prior governmental approval because no ordinance, resolution, or regulation was in effect, it was placed with permission from the property owner. Hence, JCP & L did not act unilaterally in placing its pole. Moreover, after its placement, there was nothing, by virtue of any ordinance, resolution or regulation adopted, or other governmental action, that required the "relocation, removal, shielding, or redesign of" Pole # 617 because a determination had been made that the pole posed a safety hazard to the motoring public. Ibid.
Pole # 617 was allowed to remain in substantially the same location without any "countermanding directions," id. at 591, 643 A.2d 1005, from any governmental entities. Under these circumstances, the public entities, "who own, control and maintain the thoroughfare," id. at 590, 643 A.2d 1005, in the absence of an ordinance, resolution, regulation, or other governmental action, implicitly placed their imprimatur on Pole # 617's location. We are therefore satisfied that under these particular facts, even in the absence of formal approval of Pole # 617's location, JCP & L owed no further duty to the motoring public arising out of the location of its utility pole.
Finally, we also agree that N.J.S.A. 48:3-17.1 provided yet another basis upon which summary judgment should have been granted to JCP & L. It provides that whenever a utility company has placed a pole along a public highway in this State and the use and occupancy "has continued at substantially the same location . . . for a period of ten years, then and in that case, such occupancy shall be presumed to be with the consent in writing of the owner of the soil upon which such pole or poles have been placed[.]" N.J.S.A. 48:3-17.1. While the property on which Pole # 617 is placed is not owned by the County, the County possesses an easement over that portion of the property where the pole is located. Its silence as well as the Township's silence on the pole's location can only be deemed another example of the governmental entities' implicit approval of the pole's location.
We reach this conclusion assuming that the pole may have been moved, although we question whether the police report containing the hearsay statement that the pole has been moved is competent evidence for summary judgment purposes. Rule 4:46-2. Nonetheless, N.J.S.A. 48:3-17.1 only requires that a pole continue to exist for at least a ten-year period in "substantially the same" rather than the exact location.
We therefore reverse the motion judge's order denying summary judgment to JCP & L both pursuant to Contey as well as pursuant to N.J.S.A. 48:3-17.1.

III.
The County, in its cross-appeal, urges that Contey be limited to "only those situations *805 where a public entity has elected to enact ordinances for the placement of utility poles and the utility company adheres to the directives of the public entity" and distinguishes Contey in several respects. First, it contends that the existence of the Franklin Borough ordinance in Contey was an essential factual predicate to the Court's decision and thus the decision is not analogous to the present case. Next, it argues that while Contey involved a telephone pole, this case involves an electric pole and "[d]ifferent utilities get different treatment on many aspects of their businesspole location is one such aspect." Specifically, the County maintains that the governing statute for electric poles, N.J.S.A. 48:7-1, "actually places the responsibility for safety on the electric company, and not the municipality." Additionally, the County asserts that it "did not disregard its duty to design a safe roadway" because it did not design Route 513. The County also argues that public policy precludes the imposition of liability on the County because "[t]he impact across 567 municipalities, the State of New Jersey itself, and its 21 [c]ounties is almost unimaginable as to its magnitude and ramifications." Finally, the County notes that the public entities were not parties to the Contey case as presented before the Supreme Court and the Court did not provide "any real Tort Claims analysis." As such, the County urges that "the Supreme Court did not intend to impose a broad duty of liability for pole placement on governmental entities."
The starting point in any determination of whether liability may be imposed against a public entity is the TCA and the guiding principle that undergirds its enactment, "`immunity from tort liability is the general rule and liability is the exception.'" Coyne v. N.J. Dep't of Transp., 182 N.J. 481, 488, 867 A.2d 1159 (2005) (quoting Garrison v. Twp. Of Middletown, 154 N.J. 282, 286, 712 A.2d 1101 (1998)); see also Alston v. City of Camden, 168 N.J. 170, 176, 773 A.2d 693 (2001). In this regard, "any immunity provisions in the [TCA] or by common law will prevail over the liability provisions." Malloy v. State, 76 N.J. 515, 520-21, 388 A.2d 622 (1978) (quoting N.J.S.A. 59:2-1(b)); see also Weiss v. N.J. Transit, 128 N.J. 376, 383, 608 A.2d 254 (1992) (finding "because an immunity applies, liability does not attach"). The analysis requires courts to first determine whether immunity applies and then, if not, whether liability should attach. Alston, supra, 168 N.J. at 176 n. 1, 773 A.2d 693; Pico v. State, 116 N.J. 55, 59, 560 A.2d 1193 (1989); Malloy, supra, 76 N.J. at 519, 388 A.2d 622. The burden is on the public entity to both plead and prove immunities and defenses provided by the TCA. Wymbs v. Twp. of Wayne, 163 N.J. 523, 539, 750 A.2d 751 (2000).
The TCA unequivocally states that "public entities shall only be liable for their negligence within the limitations of this act. . . ." N.J.S.A. 59:1-2; see also Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 457, 963 A.2d 828 (2009) ("The [TCA] re-establishes sovereign immunity and provides that `public entities shall only be liable for their negligence within the limitations of [the TCA] and in accordance with the fair and uniform principles established' in the [TCA]." (quoting N.J.S.A. 59:1-2)); Garrison, supra, 154 N.J. at 294, 712 A.2d 1101 ("When construing the [TCA], courts seek to follow the legislative mandate favoring the immunity of public entities."); Pico, supra, 116 N.J. at 59, 560 A.2d 1193 (recognizing "the public policy of this State is that public entities shall be liable for their negligence only as set forth in the [TCA]"). The Attorney General's Task Force Comment advised courts to "exercise restraint in the acceptance of novel causes of action against public entities." *806 Report of the Attorney General's Task Force on Sovereign Immunity (1972), cmt. to N.J.S.A. 59:2-1.
In view of these precedents, courts have generally declined to recognize novel causes of action against public entities. See, e.g., Ayers v. Twp. of Jackson, 106 N.J. 557, 598, 525 A.2d 287 (1987); Blunt v. Klapproth, 309 N.J.Super. 493, 507, 707 A.2d 1021 (App.Div.), certif. denied sub nom. Blunt v. Wirtz, 156 N.J. 387, 718 A.2d 1216 (1998). As noted by the motion judge, it is highly unlikely that the Supreme Court would recognize a novel cause of action outside of the TCA in a case where the public entity was not a participant in the Court's proceedings. The Contey Court's reference to the TCA was fleeting and raised only in the context of potential plan and design immunity under N.J.S.A. 59:4-2, Contey, supra, 136 N.J. at 589-91, 643 A.2d 1005, and without benefit of briefing or argument from any public entity. In our view, this is evidence the Court did not intend to recognize a novel source of liability against public entities outside of the TCA. See Contey, supra, 136 N.J. at 590-91, 643 A.2d 1005. Therefore, we conclude Contey does not impose a new source of liability upon the County. Any liability imposed upon the County must be based upon the provisions of the TCA.
Before the motion judge, plaintiff's counsel conceded that liability could not be imposed upon the County under Chapter Four of the TCA for a condition of public property since the pole is not property of the County. N.J.S.A. 59:4-1 and 4-2. Likewise, plaintiff's counsel also conceded that the County was immune from liability for its failure to inspect or failure to adopt an ordinance regulating the placement of utility poles under Chapter Two. N.J.S.A. 59:2-6 and 2-4. Therefore, we need not revisit the applicability of these provisions in this appeal.
Moreover, we reject plaintiff's contention that vicarious liability may be imposed against the County. Any such liability is premised upon an "injury proximately caused by an act or omission of a public employee[.]" N.J.S.A. 59:2-2(a). Plaintiff, however, voluntarily dismissed the claims originally asserted against individual County employees arising out of their snowplowing activities earlier on the day of plaintiff's accident. "A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable." N.J.S.A. 59:2-2(b).
We therefore turn our attention to the County's contention that its decision to defer responsibility for deciding where to place utility poles to utility companies was an exercise of its discretion entitled to immunity under the TCA. To support this position, the County submitted evidence that the County "owns and maintains over 250 miles of roads" and that along those roads are located "[b]etween 7,000 and 8,000 utility poles." A certification from Stephen W. Hammond (Hammond), Director of Public Works and a county engineer, revealed that the County had limited resources in terms of personnel. Specifically, the County employed a total of nine full-time engineers, all of whom were working on "current assignments," and they could not incur the additional responsibility to study or analyze the placement of "utility poles and that the utility pole placement/location has been the province of the utility company, and not the County of Morris."
In addition, Hammond indicated that "[s]hifting the burden of selecting pole location to the County of Morris" was "unworkable" because, among other factors, the County's engineers lacked the requisite *807 expertise "to do an effective layout of pole location" and "do not have any time in their current job requirements or work time commitments to obtain the training." He also expressed the belief that there were "no funds available in the engineering budget, or time available to engineering personnel, to get involved and/or tied up with BPU (Board of Public Utilities) proceedings related to pole relocation disputes or cost allocation disputes."
Christopher Vitz (Vitz), a supervising engineer in the County's Department of Public Works, stated in his certification that "[n]o one involved with county government ever contemplated that a pole placed somewhere between 40-70 years ago by a public utility . . . would bring liability on a county (or local or state) government that had no input into the pole's location." Vitz asserted that it "has always been accepted in relations" between the County and utilities that "since the utility was the entity that made the decision as to location, the utility, and not the County, would be responsible for any mistakes. . . . Morris County and utilities that locate poles along its roads have always operated on that basis."
Vitz was also deposed and testified that the only items the County maintains, outside the roadway surface, are "sight distance and guardrails and [traffic] signs." He indicated that outside the roadway surface, the County did not have "jurisdiction on the location of the utility poles" because "[i]t's left to utility companies." Vitz stated that a utility need not get approval from the County before placing a pole within the County right-of-way next to a County road. He testified that he did not recall the County "ever giving a utility company a written approval or permit to install a utility pole at any location." He also confirmed the County never received a complaint about a JCP & L pole along the area of Route 513 where Pole # 617 was located at the time of plaintiff's accident.
N.J.S.A. 59:2-3 provides, in pertinent part:
c. A public entity is not liable for the exercise of discretion in determining whether to seek or whether to provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services;
d. A public entity is not liable for the exercise of discretion when, in the face of competing demands, it determines whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel unless a court concludes that the determination of the public entity was palpably unreasonable. Nothing in this section shall exonerate a public entity for negligence arising out of acts or omissions of its employees in carrying out their ministerial functions.
Subsection (c) immunizes a public entity when it exercises discretion in the context of decisions "made at a relatively high level of government[al service.]" Lopez v. City of Elizabeth, 245 N.J.Super. 153, 158, 584 A.2d 825 (App. Div.1991). Subsection (d) accords immunity for certain operational decisions made with respect to the utilization or allocation of resources, provided the exercise of this discretion has not been palpably unreasonable. Ibid.
Immunity sought under either subsection (c) or (d) requires competent evidence to support the claimed immunity. See ibid. (finding the unsupported statement that "`you only have funds for one'" inspection was insufficient for the jury to have concluded that the public entity was entitled to immunity based upon discretionary *808 decisions under subsection (c) or (d)); see also Daniel v. State, Dep't of Transp., 239 N.J.Super. 563, 598-600, 571 A.2d 1329 (App.Div.), certif. denied, 122 N.J. 325, 585 A.2d 343 (1990) (noting the paucity of evidence before the jury to support the State's contention that changes to Route 30 resulting in a redirection of the median's height involved the exercise of discretion).
Here, the certifications submitted from the County's engineers are conclusory and lack a factual foundation. For example, it cannot be gleaned from the certifications that the County's decision to defer responsibility for determining where and how to place utility poles to utility companies, was a decision reached only after the County's "`exercise of personal deliberations and judgment[.]'" Kolitch v. Lindedahl, 100 N.J. 485, 495-96, 497 A.2d 183 (1985) (quoting Miree v. United States, 490 F.Supp. 768, 774 (N.D.Ga.1980)). Nor were the assertions in the certifications that funding and personnel constraints prevented the County from undertaking responsibility for pole placements, supported with specific factual evidence. In short, on this record, it cannot be said that the facts, when viewed most favorably to plaintiffs under Brill, can lead one to the inescapable conclusion that the decision to defer responsibility for placing utility poles along county roadways to utility companies was the exercise of discretion subject to immunity under either subsection (c) or (d).
The remaining arguments advanced by the parties, including those advanced by plaintiffs in their cross-appeal, are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

IV.
To summarize, pursuant to Contey and N.J.S.A. 48:3-17.1, JCP & L owed no legal duty to plaintiff. Further, we conclude Contey does not impose a novel source of liability upon the County. Because we are convinced from our review of the briefs and record on appeal that the arguments that the County may be liable for or immune from plaintiff's claim have not been sufficiently developed, we remand for further proceedings.
The denial of summary judgment in favor of plaintiffs is affirmed. The denial of summary judgment in favor of JCP & L is reversed and the claims against JCP & L are dismissed with prejudice. The order denying summary judgment in favor of the County is vacated and the matter remanded for further proceedings. We do not retain jurisdiction.
FISHER, J.A.D., concurring.
I wholeheartedly join in the court's judgment and all of Sections I and II of the majority opinion. I write separately only to express my disagreement with comments in Section III that Contey v. New Jersey Bell Telephone Co., 136 N.J. 582, 643 A.2d 1005 (1994) does not impose liability on a public entity for the safety of its roadways.
To support their declaration that "the [Contey] Court did not intend to recognize a novel source of liability against public entities outside" the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, the majority found evidence in the principle that courts will generally decline to recognize novel causes of action against public entities and in the fact that Contey was decided by the Court without the participation of a public entity. Ante at 91, 8 A.3d at 806. In disagreeing with the majority's conclusion as to Contey's meaning, I would find the best evidence of what the Court intended to be what the Court said. With unmistakable clarity, the Court expressed *809 its belief "that responsibility for the safety of motorists should rest with those who own, control, and maintain the thoroughfare." Contey, supra, 136 N.J. at 590, 643 A.2d 1005.
The Court's statements regarding the responsibility for road safety do not appear to me to be dictum. It seems clear that the decision in Contey to absolve the public utility of liability rested upon the Court's conclusion that responsibility for safety rested elsewhereon those who own, maintain or control roadways. These were not gratuitous remarks inessential to the Court's holding. State ex rel. J.A., 195 N.J. 324, 356, 949 A.2d 790 (2008). And, even if the Court's statement in Contey on the point in controversy could be characterized as obiter dictum, I believe we are nevertheless bound. See Lehigh Valley R.R. Co. v. Chapman, 35 N.J. 177, 187, 171 A.2d 653 (holding that dictum of the state's court of last resort is "entitled to great weight"), cert. denied, 368 U.S. 928, 82 S.Ct. 364, 7 L.Ed.2d 192 (1961); Barreiro v. Morais, 318 N.J.Super. 461, 468, 723 A.2d 1244 (App.Div.1999) (holding that although earlier Supreme Court rulings on a subject constituted dictum, "we consider ourselves bound by them").
Of course, the principle that a public entity is responsible for the safety of roadways it owns, maintains or controls is not the end of the analysis. The scope of that general obligation remains uncertain and the TCA may cloak the public entity in immunity in these circumstances. I agree with my colleagues that the record has not been sufficiently developed in any of those respects for the entry of summary judgment in favor of the County of Morris.
NOTES
[1] Plaintiff, Julia Seals, has asserted a per quod claim in this action. Reference to "plaintiff" throughout this opinion refers only to John Seals.
[2] Specifically, JCP & L maintains it has an easement "to place its pole in the area of Pole #617" and provides as proof (1) a grainy copy of a deed transferring an easement to JCP & L's predecessor, dated December 3, 1928, and (2) a letter from an attorney, Arnold Gerst, stating that "title information shows that the public utility in the 1920[]s had (and still has) an easement with respect to the property where Pole [#]617 is located. . . . [T]he landowner owns the property where the pole is located." Plaintiffs rely on the deposition testimony of John Santucci, in which he testified that he had searched the grantor/grantee index and was unable to find an easement for Pole #617 (but found an easement for another pole in the same vicinity), as proof that JCP & L does not have an easement for Pole #617 and "is trespassing on the present owner's property with knowledge of and indifference to that trespass!"
[3] The parties dispute the exact date that the pole was installed.
[4] At the heart of this dispute is an expert report by forensic engineer Ira Kuperstein that concluded that the pole had been moved closer to the roadway sometime between 1989 and 2003 and a police report from 1998 indicating that the pole had been moved closer to the road.
[5] Points I through XI do not relate to plaintiffs' cross-appeal.